### UNITED STATES v. BOWMAN et al.

(District Court, S. D. New York. February 15, 1921.)

1. **Shipping** ☞3—**Sovereign can regulate conduct of citizens on its ships on high seas.**

   One of the accepted functions of a sovereign is to regulate the ships under its flag on the high seas, and the conduct of its citizens while on those ships.

2. **Criminal law** ☞18—**Congress can make criminal statute applicable on the high seas.**

   Under Const. art. 1, § 8, cl. 3, permitting the regulation of foreign commerce, clause 10, authorizing the definition of felonies on the high seas, and clause 18, authorizing laws required for the effective exercise of the powers of the government, Congress has power, if it sees fit to do so, to make the statute prohibiting the presenting of false claims against a governmental agency applicable on the high seas.

3. **Criminal law** ☞18—**Criminal laws are effective only within territory of the United States.**

   Ordinarily, and prima facie, the criminal laws of the United States are effective only within the territory of the United States.

4. **Criminal law** ☞97(3)—**High seas outside of jurisdiction of other states is constructively part of territory of United States.**

   For the purpose of determining the applicability of the criminal laws, the high seas outside of a marine league from the shore and outside of the jurisdiction of any particular state are constructively a part of the territory of the United States, and are peculiarly within the jurisdiction of the United States, as distinguished from that of the states.

5. **Criminal law** ☞89—**Jurisdiction of criminal offenses must be conferred on United States courts.**

   Jurisdiction of criminal offenses must be conferred on the United States courts; it is never inferred.

6. **United States** ☞121—**Statute prohibiting false claims against government or its agencies has not been extended to high seas.**

   Criminal Code, § 35, as amended by Act Oct. 23, 1918 (Comp. St. Ann. Supp. 1919, § 10199), making it an offense to present or cause to be presented false claims against the government or its departments, or a corporation whose stock is owned by the government, which is contained

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in a chapter of the Code which has not been expressly extended to the high seas, is not applicable to offenses committed on the high seas or in a foreign country, though on an American vessel.

Raymond H. Bowman and others were indicted for presenting and causing to be presented claims against a corporation whose stock was owned by the government while they were on board an American vessel on the high seas, or in a foreign country, and one defendant demurs to the indictment. Demurrer sustained.

Francis G. Caffey, U. S. Atty., and Ben A. Matthews and Henry E. Kelley, Asst. U. S. Attys., all of New York City.

George A. Hopkins, of New York City, for defendants.

MAYER, District Judge. This demurrer brings up the question whether this court has jurisdiction of the offenses denounced by section 35 of the United States Criminal Code, if committed by a citizen of this country on board an American vessel upon the high seas.

During the period covered by the indictment, between October, 1919, and January, 1920, the steamship Dio belonged to the government. The United States owned and owns all the stock in the United States Shipping Board Emergency Fleet Corporation. The National Shipping Corporation agreed to operate and manage the Dio on behalf of the Fleet Corporation. Under the contract, the expenses for fuel, oil, labor, and materials were to be paid by the Fleet Corporation.

There are four defendants. One defendant was master of the ship. Demurrant, a citizen of the United States, was the chief engineer. Another defendant was the representative at Rio de Janiero, Brazil, of the Standard Oil Company of Brazil, a dealer in fuel oil there. Another defendant was a merchant ship repairer and engineer at Rio de Janiero. Johnston & Co., not a party hereto, was the agent of the Shipping Corporation at Rio de Janiero.

The indictment is in six counts. All of them are laid under section 35 of the Criminal Code.[1] Each charges an offense under that section,

[1] Section 35 of the Criminal Code, as amended October 23, 1918 (40 Stat. 1015 [Comp. St. Ann. Supp. 1919, § 10199]), is as follows:

"Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim certificate, affidavit, or deposition knowing the same to contain any fraudulent or fictitious statement or entry; or whoever shall take and carry away or take for his own use or for the use of another, with intent to steal or purloin, any personal property of the United States, or any branch or department thereof,

committed outside of the territory of the Southern district of New York. In the way hereinafter stated, in general, it may be said that it is alleged that the conduct complained of occurred either on the high seas, or in the harbor of Rio de Janiero, or at Rio de Janiero.

In each count it is alleged, in accordance with section 41 of the Judicial Code (Comp. St. § 1023), that the Southern district of New York is the district in which three defendants, including Bowman, were found, and into which they were first brought after the commission of the offense; also that the fourth defendant has not been brought into or found within this district.

Bowman, by demurrer to the indictment as a whole, and to each count, has challenged this court's jurisdiction.

*The Indictment.* The substance of the offense charged in the first, second, and third counts is a conspiracy to defraud the Fleet Corporation by obtaining and aiding to obtain payment or allowance of a false and fraudulent claim against that corporation. The crime alleged is illustrated by the first count. The essence of the scheme was this: The master and Bowman, the chief engineer, of the Dio, would send a wireless message to Johnston & Co., the agent at Rio de Janiero of the Shipping Corporation which operated the vessel, that upon its arrival at that port 1,000 tons of fuel oil would be needed for their ship. An order for that quantity would be given to the Oil Company, the dealer in that city. One of the defendants, the representative of the Oil Company, would accept the order and charge the vessel for the full amount, but deliver only 600 tons. The invoice would be made out in the name.

or any corporation in which the United States of America is a stockholder; or whoever shall enter into any agreement, combination, or conspiracy to defraud the government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim; and whoever, having charge, possession, custody, or control of any money or other public property used or to be used in the military or naval service, with intent to defraud the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, or willfully to conceal such money or other property, shall deliver or cause to be delivered to any person having authority to receive the same any amount of such money or other property less than that for which he received a certificate or took a receipt; or whoever, being authorized to make or deliver any certificate, voucher, receipt, or other paper certifying the receipt of arms, ammunition, provisions, clothing, or other property so used or to be used, shall make or deliver the same to any other person without a full knowledge of the truth of the facts stated therein and with intent to defraud the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both. And whoever shall purchase, or receive in pledge, from any person any arms, equipment, ammunition, clothing, military stores, or other property furnished by the United States, under a clothing allowance or otherwise, to any soldier, sailer, officer, cadet, or midshipman in the military or naval service of the United States or of the National Guard or Naval Militia, or to any person accompanying, serving, or retained with the land or naval forces and subject to military or naval law, having knowledge or reason to believe that the property has been taken from the possession of the United States or furnished by the United States under such allowance, shall be fined not more than $500 or imprisoned not more than two years, or both."

of the dealer for 1,000 tons. The master and Bowman would receipt for 1,000 tons and approve payment of the invoice. In this way Johnston & Co., for account of the Fleet Corporations, would be led to give their check on a local bank at Rio de Janiero, payable to bearer, in an amount sufficient to cover the invoice. The merchant ship repairer at Rio (and the defendant) would get the check cashed. The Oil Company would then be paid for the 600 tons actually sold and delivered. The balance, equivalent to the price of 400 tons, would be divided among the defendants. In due course false reports of the transaction would be made, and the Fleet Corporation in reliance upon these would pay the whole claim, fraudulent to the extent of the sum converted by the defendants to their own use.

The fourth count describes the offense as making and causing to be made for payment and approval a knowingly false, fictitious, and fraudulent claim against the Fleet Corporation. The fifth charges the presentation of the same claim and the causing it to be presented to the Fleet Corporation. The sixth charges that the defendants knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device a material fact in the presentation of this claim to the Fleet Corporation, for the purpose and with the intent of cheating, swindling, and defrauding the government, and to obtain and aid in obtaining payment thereof.

The locus at which took place the acts relied upon as constituting crimes is variously described in the several counts:

In the first count, it is alleged that the conspiracy occurred on the high seas on board the Dio; and out of the jurisdiction of any particular state or of any district of the United States, but within the admiralty and maritime jurisdiction of the United States.

The second alleges that the same conspiracy occurred upon the high seas and elsewhere out of the jurisdiction of any particular state or of any district of the United States, but within the admiralty and maritime jurisdiction of the United States, to wit, on board the Dio, on the high seas, and at the port of Rio de Janiero, as well as in that city.

The third alleges that the offense took place at the city of Rio de Janiero, out of the jurisdiction of any particular state or the territorial jurisdiction of any district of the United States.

The fourth alleges that the offense of making the false claim occurred on board the Dio at the port of Rio de Janiero, out of the jurisdiction of any particular state, or of any district of the United States, but within the admiralty and maritime jurisdiction of the United States.

The fifth alleges that presentation of the false claim was at the city of Rio de Janiero, out of the jurisdiction of any particular state of the United States, and out of the territorial jurisdiction of any district of the United States.

The sixth alleges that the misconduct was at the port and at the city of Rio de Janiero, out of the jurisdiction of any particular state, and out of the territorial jurisdiction of any district of the United States.

*The Demurrer.* The substance of the grounds of the demurrer to the indictment and every count is that—

(1) It is not alleged that the offense was committed within the jurisdiction of the United States or of any particular state thereof.

(2) It appears that the misconduct complained of was committed without the jurisdiction of the United States, or of any state thereof, and within the jurisdiction of the Republic of Brazil.

*The Issue.* It is not claimed by the demurrer that the substantive matter incorporated in any of the counts is insufficient to state a complete offense under section 35 of the Criminal Code. An examination of the indictment will disclose that each count avers every element required by the statute to constitute a violation.

No objection is made to the venue. If any federal court has jurisdiction to proceed, the Southern district of New York is the correct forum. The demurrant was found in and first brought into this district upon the return of the Dio from the voyage during which the occurrences complained of transpired. There are appropriate allegations to this effect in each count, in conformity with section 41 of the Judicial Code.

The sole basis of demurrant's contention is that the locus in quo affirmatively shown negatives this court's jurisdiction. The first count relates only to the high seas on board the Dio; the second to the same and at the port of Rio de Janiero. The fourth covers what occurred on board the ship while in port at Rio de Janiero. The third and fifth deal only with transactions at the city of Rio de Janiero, wholly within the Republic of Brazil; the sixth with transactions at the port and city of Rio de Janiero.

[1] One of the accepted functions of a sovereign is to regulate the ships under its flag on the high seas and the conduct of its citizens while on those ships. That authority has been exercised, and repeatedly sustained by the courts. Crapo v. Kelly, 16 Wall. 610, 623-632, 21 L. Ed. 430; U. S. v. Rodgers, 150 U. S. 247, 260, 261, 264, 265, 14 Sup. Ct. 109, 37 L. Ed. 1071; The Hamilton, 207 U. S. 398, 403, 405, 28 Sup. Ct. 133, 52 L. Ed. 264; American Banana Co. v. United Fruit Co., 213 U. S. 347, 29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047; Wilson v. McNamee, 102 U. S. 572, 574, 26 L. Ed. 234; U. S. v. Smiley, 6 Sawy. 640, 645; 27 Fed. Cas. 1132, 1134, No. 16,317.

[2] That Congress has power to enact legislation such as that embodied in section 35 of the Criminal Code, applicable upon the high seas, if it so determines, is plain. It may be based on any one of several express provisions of the Constitution. Among these are three embraced in article 1, § 8, to wit: (1) Clause 3, relating to the regulation of foreign commerce; (2) clause 10, authorizing the definition of felonies on the high seas; (3) clause 18, sanctioning the passage of all laws required for the effective exercise of the powers of the government, and hence all such as the Congress may deem essential for the protection of the government or of its agencies or property.

[3, 4] Ordinarily, however, and prima facie, the criminal laws of the United States are effective only within the territory of the United States. For that purpose, however, the high seas, outside a marine league from the shores and outside the jurisdiction of any particular state, are constructively a part of such territory. Indeed, the high seas are a part peculiarly within the jurisdiction of the United States in the application of its criminal laws, as distinguished from the states

and their laws. U. S. v. Smiley, supra; St. Clair v. U. S., 154 U. S. 134, 152, 14 Sup. Ct. 1002, 38 L. Ed. 936; In re Moncan (C. C.) 14 Fed. 44, 48; U. S. v. Rodgers, supra.

When, however, the Congress has intended that its laws shall be operative on the high seas, it has so stated. Chapters 11 and 12 of the United States Criminal Code refer to the high seas. Chapter 4 in which section 35 here under consideration is included, does not.

[5, 6] Jurisdiction of criminal offenses must be conferred upon the United States courts. It is never inferred. The question, thus, is not one of power but one of statutory construction. Section 35 was amended in certain respects on October 23, 1918, but prior thereto it had been long in existence. Yet never, so far as appears, has there heretofore been any case in which this section has been invoked to punish the offences denounced, if committed on the high seas or in a foreign country. In the absence, therefore, of language extending the locus of the crime to the high seas or beyond the territory of the United States, the court and not the Congress would be writing the statute, if it gave to it the construction urged by the government.

My attention has been called to the opinion of the acting Attorney General dated November 1, 1920, in respect of the Eighteenth Amendment. The opinion states that:

"The Eighteenth Amendment by its terms applies to the United States and 'all territory subject to the jurisdiction thereof.' "

In the case at bar, section 35 does not contain the language "all territory subject to the jurisdiction." Whether the opinion of the Acting Attorney General is correct or not, it is apparent that he was construing a statute enacted under a constitutional provision containing language not found in section 35, and therefore not the subject-matter of construction in this case.

Demurrer sustained.