# OLSEN *v.* SMITH.

**ERROR TO THE COURT OF CIVIL APPEALS FOR THE FOURTH SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.**

No. 42. Argued November 3, 1904.—Decided November 28, 1904.

State laws regulating pilotage, although regulations of commerce, fall within that class of powers which may be exercised by the States until Congress has seen fit to act upon the subject.

Whether illegal provisions in a pilotage statute granting discriminatory exemptions to vessels of that State can be eliminated without destroying the other provisions of the statute, is a State and not a Federal ques-

tion. For the purpose of determining the validity of state statutes in their Federal aspect this court accepts the interpretation given to the statute by the state court and tests their validity accordingly.

The effect of Rev. Stat. §§ 4237, 4444, is not to interfere with or abrogate state laws regulating pilotage, but to withdraw coastwise steam vessels from the pilotage charges imposed by such state laws.

A state pilotage law subjecting all vessels, domestic and foreign, engaged in foreign trade to pilotage regulations, but which exempts pursuant to law coastwise steam vessels of the United States, is not in conflict with provisions in the treaty between the United States and Great Britain to the effect that British vessels shall not be subject to any higher or other charges than vessels of the United States.

Pilotage regulations being under the control of the State, a state pilotage law otherwise unobjectionable, is not violative of the Fourteenth Amendment because it prevents an unlicensed person from rendering services as a pilot or because it creates a monopoly in favor of the pilots who are licensed under the act.

THE facts, which involved the constitutionality of the pilotage law of the State of Texas, are stated in the opinion.

*Mr. Walter Gresham* for plaintiff in error:

The act constitutes one scheme and the illegal provisions cannot be separated from the legal provisions. *Spraigue* v. *Thompson,* 118 U. S. 94; *Freeman* v. *The Undaunted,* 37 Fed. Rep. 662. The statute conflicts with the treaty with Great Britain. U. S. Treaties, 1889, 411. The statute conflicts with the anti-trust law of July 2, 1890, 26 Stat. 647. As construed by this court this law prohibits all contracts and combinations creating monopolies or preventing free competition in traffic or commerce between the States or with foreign nations, or hindering or impeding the instrumentalities of interstate or foreign commerce. The Galveston Pilot Association is such a combination. *United States* v. *Freight Assn.,* 166 U. S. 327; *United States* v. *Joint Traffic Assn.,* 171 U. S. 569; *Addyston Pipe Case,* 175 U. S. 211; *Northern Securities Co.* v. *United States,* 193 U. S. 197; *Montague* v. *Lowry,* 193 U. S. 38.

The State cannot declare an occupation to which none of the functions of government attach, to be an office, limit the

number of citizens who may hold the same, and prohibit all others, whatever their qualifications and fitness, from pursuing it. The Texas statute which declares a pilot to be an officer, and limits the number of citizens who can serve as pilots to the defendants in error, and such deputies as they may choose to appoint, is void.

The Legislature has limited the number of deputies and delegated to defendants in error the power to select and limit the number of men who can become qualified to serve as branch pilots. Such a limitation and delegation of authority by the Legislature is illegal, whether a branch pilot be an officer of the State or not. *Willis* v. *Owens*, 43 Texas, 41; *Peoples' R. R. Co.* v. *Memphis R. R. Co.*, 10 Wall. 50; Cooley's Constitutional Limitations, 6th ed., 137 and note 1. A pilot is not a public officer. *Hobart* v. *Drogan*, 10 Pet. 123; *Dean* v. *Healy*, 66 Georgia, 503; Navigation Laws of the U. S., 1899, 53.

He is merely a navigator,—one who is or ought to be familiar with taking charge of a ship, and taking it into or out of the port at the particular place where he is engaged in the business. 18 Am. & Eng. Ency. of Law, 444; *United States* v. *Forbes*, 1 Crab. 558; *S. C.*, Fed. Cas. No. 15,129. As to who are officers, see Texas Const. art. II, § 1, art. IV, § 1; *Petterson* v. *Texas*, 58 S. W. Rep. 100.

The right of the defendants in error to maintain this suit is based upon the hypothesis that a pilot is a state officer. *United States* v. *Hartwell*, 6 Wall. 385; *Atty. Gen.* v. *Drohan*, 169 Massachusetts, 534; *Shelby* v. *Alcorn*, 36 Mississippi, 273; *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438.

If a State deprives a citizen who is a skilled seaman, qualified to be a pilot, of his natural right to pursue his occupation it deprives him of the "liberty" and "property" guaranteed him by the Fourteenth Amendment. *Slaughter House Case*, 16 Wall. 79; Brannon's Fourteenth Amendment, and cases cited pp. 109, 115; *Smith* v. *Alabama*, 124 U. S. 480; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *S. C.*, 82 Fed. Rep. 833; *Powell* v.

*Pennsylvania*, 127 U. S. 684; *Butchers' Union Co.* v. *Crescent City Co.*, 1 U. S. 757, 762; *Allgeyer* v. *Louisiana*, 165 U. S. 589; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 558, 567.

The power over the subject of pilots and pilotage is conferred upon Congress by the commercial clause of the Constitution. Art. I, § 8, cl. 3. This power is without limit and exclusive and cannot be delegated or surrendered.

It has been recognized that the States, in the absence of Congressional action, have authority to regulate the subject of pilots and pilotage, although the lines of argument by which this conclusion has been reached are by no means uniform. At the time when the decisions cited by defendants in error were rendered Congress had not, except the act of 1789, legislated upon this subject, and most of the harbors and rivers of the United States were only known to the local pilots. These conditions are now changed and Congress has legislated in many matters respecting pilotage and the earlier cases can be distinguished.

*Mr. James B. Stubbs*, with whom *Mr. Charles J. Stubbs* was on the brief, for defendants in error:

The acts of Congress are paramount and nullify all conflicting provisions whatever in a state statute but the objectionable features of the Texas statute are separable. *The Alameda*, 32 Fed. Rep. 333; *Reagan* v. *Trust Co.*, 154 U. S. 362; *Telegraph Co.* v. *Texas*, 62 Texas, 630; *Keokuk &c. Co.* v. *Keokuk*, 95 U. S. 89; *Spraigue* v. *Thompson*, 118 U. S. 90; *The Undaunted*, 37 Fed. Rep. 662, distinguished; *Loeb* v. *Trustees of Columbia Township*, 179 U. S. 490.

The rule requiring ships in the foreign trade to take a pilot, or pay half pilotage, can and was intended to be applicable to such vessels, in any event, regardless of the rules then or thereafter prescribed for domestic or coasting craft. The state exemption of such is broad, including many that the Federal act omits, and it is apparent that the legislature would not have hesitated, if called to its attention, to have made the

state exemptions or options conform to the National. *Tiernan* v. *Rinker,* 102 U. S. 123; *S. C.,* 47 Texas, 393; *T. & P. Ry. Co.* v. *Mahaffey,* 10 T. C. R. 779; *Florida Central Ry.* v. *Schutte,* 103 U. S. 118; *Little Rock & Ft. S. R. Co.* v. *Worthen,* 120 U. S. 102. This court will accept the construction of the Texas courts in such cases as this. *Cargill Co.* v. *Minnesota,* 180 U. S. 460; *Tullis* v. *Lake Erie & W. R. Co.,* 175 U. S. 348; *Mo. Pac. R. Co.* v. *Nebraska,* 164 U. S. 403; *Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418; *St. L., I. M. & S. R. Co.* v. *Paul,* 173 U. S. 404; *M., K. & T. Ry.* v. *McCann,* 174 U. S. 586.

The statute does not contravene the foreign treaty or the anti-trust act.

No restraint of commerce or prevention of competition can exist by virtue of any agreement among the pilots themselves. The law alone is responsible for the limited number of pilots, and it alone prescribes the maximum rates of pilotage, and generally provides for the regulation of the service by the Commissioners who are responsible to the Governor.

The formation of a partnership among all the pilots of the port is not unlawful. *Petterson* v. *Board of Pilot Commissioners,* 57 S. W. Rep. 1002; *Jones* v. *Clifford,* 5 Florida, 510; *Levine* v. *Michel,* 35 La. Ann. 121; *The Pirate,* 32 Fed. Rep. 490; *The Dundee,* 103 Fed. Rep. 698; *S. C.,* 108 Fed. Rep. 678; *Mason* v. *Ervine,* 27 Fed. Rep. 459.

An agreement to be in conflict with the anti-trust act must directly and substantially, and not merely indirectly and incidentally, regulate interstate or foreign commerce. *Anderson* v. *United States,* 171 U. S. 615. And see besides cases cited by plaintiff in error. *Hopkins* v. *United States,* 171 U. S. 578.

The State has the right to limit the number of port pilots and require service as a deputy pilot as a condition precedent to appointment as pilot. *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Petterson* v. *Board,* 57 S. W. Rep. 1002;

The power exercised by States in enacting pilotage laws is an original power and not one delegated by Congress. *The*

*Chase,* 14 Fed. Rep. 854; *Davidson* v. *Sadler,* 57 S. W. Rep. 54.

The position of a pilot is that of a public officer. *People* v. *Woodbury,* 14 California, 43; *Flynn* v. *Abbott,* 16 California, 359; *Doliver* v. *Parks,* 136 Massachusetts, 499; *The California,* 1 Sawy: 596; *S. C.,* Fed. Cas. No. 2313; *Barnaby* v. *State,* 21 Indiana, 450. See also laws in New York and Louisiana referred to in foregoing opinions.

Courts should declare a law unconstitutional only when it is clearly so. *Fletcher* v. *Peck,* 6 Cranch, 87. Where an employment or a duty is a continuing one, defined by rules prescribed by law and not by contract, such a charge or employment is an office. Measured by this rule the Galveston pilots are officers. 23 Am. & Eng. Ency. of Law, 2d ed., 324, and cases cited in note 1.

As to the deputies some preliminary training for pilots is essential, and it is well-nigh the universal practice in our maritime States to require a proper service as deputies or apprentices. *Palmer* v. *Woodbury,* 14 California, 45.

The Fourteenth Amendment was not designed to interfere with the police power of the State, and the pilotage laws are police regulations of commerce. Congress possesses the right to establish these regulations, but as long as it does not assume this power the States may exercise it. *Gibbons* v. *Ogden,* 9 Wheat. 1, 207. If Congress had taken charge of the entire subject its right to prescribe an apprenticeship or a deputyship could not be successfully challenged. Tiedeman's Lim. of Police Power, 626; Hughes on Admiralty, 28, 38; *The China,* 7 Wall. 53; *Wilson* v. *McNamee,* 102 U. S. 572.

Legislation limited in its application, but operating alike on all persons similarly situated, is not within the Fourteenth Amendment. *Barbier* v. *Connolly,* 113 U. S. 27; *A., T. & S. F. Ry.* v. *Matthews,* 174 U. S. 106; *The Chase,* 14 Fed. Rep. 854.

States have delegated to others the authority to recommend in one case, and to appoint in the other, the pilot commis-

sioners of the ports of Boston and New York respectively. Opinion of the Justices, 154 Massachusetts, 603; *S. C.*, 31 N. E. Rep. 634; *Sturges* v. *Spofford*, 45 N. Y. 446; *Cooley* v. *Board of Wardens*, 12 How. 300; and see *Ex parte McNeill*, 13 Wall. 236.

Congress can, if it deems best, assume control of pilotage in every State, but it is well settled that the mere grant to Congress of the power to regulate commerce did not deprive the States of the power to regulate pilots, unless and until Congress should determine otherwise. The only question raised or doubt expressed was as to the validity of the laws or the authority of the States to enact them. *The Carry L. Tyler*, 106 Fed. Rep. 426; *The Creole*, Fed Cas. 13,033; *Darden* v. *Thompson*, 101 Virginia, 635, 755.

Pilot laws of other seaboard States are similar to this as to apprentices. Alabama Code, 1896, §§ 2992, 2996, 2999; Florida, Rev. Stat. 1892, §§ 938 *et seq.*; Delaware Code, 1893, 556, 558; Georgia Code, 1895, §§ 1651, 1653, 1683, 1684; New York, 3 Rev. Stat. pp. 2266, 2273; Virginia Code, 1887, §§ 1955 *et seq.*; New Jersey, 2 Gen. Stats., arts. 56, 59; Mississippi, Ann. Code, §§ 2252, 2258, 2260, 2261; Maryland, 2 Pub. Gen. Laws, art. 74, §§ 4, 6, 10; South Carolina, Rev. Stat.1893, §§ 1357, 1365; North Carolina, Battle's Rev. ch. 87, §§ 1, 7.

MR. JUSTICE WHITE delivered the opinion of the court.

The defendants in error, who were plaintiffs in the court of original jurisdiction, as the duly licensed state pilots of the port of Galveston, Texas, sued in a Texas District Court to recover the damages averred to have been caused them by the alleged illegal action of the defendant in offering, when he was not authorized by law to do so, his services "to pilot sail vessels or registered steamers, bound to or from foreign ports, in or out of the port of Galveston." An injunction was prayed restraining the defendant from acting "in any manner as branch or deputy pilot, or pilot under the laws of the State

of Texas, and of said port, or under the laws of the United States, with respect to the kind of vessels specified." The defendant filed a general demurrer, and, reserving the demurrer, answered, raising special defenses based on averments that the pilotage laws of Texas were in conflict with the Constitution and laws of the United States. The court overruled the demurrer of the defendant, and, on the ground that no defence was stated, sustained a demurrer to the answer. A judgment was entered in favor of the plaintiffs, awarding an injunction as prayed. 68 S. W. Rep. 320. The case was taken to the Court of Civil Appeals for the First Supreme Judicial District, was thence transferred to the Court of Civil Appeals for the Fourth Supreme Judicial District, where the decree below was affirmed, with a slight modification not necessary to be stated. The Supreme Court of the State having declined to review the action of the Court of Civil Appeals, this writ of error was prosecuted to the latter court.

The defenses raised by the answer, which the court below held to be no defense to the action, and which are in effect reiterated in the assignments of error; require us to determine, first, whether the State of Texas had power to enact laws regulating pilotage in the ports of that State; and, second, if such power existed, whether the provisions of the state statutes on that subject are void because they conflict with acts of Congress on the subject of pilotage, and because the statutes of Texas as to pilotage contain provisions of such a character as to cause them to be repugnant to the Fourteenth Amendment or to the laws of Congress forbidding combinations in restraint of trade or commerce. Briefly, the pilotage laws of the State of Texas provide as follows: The governor is authorized to appoint for each port, whose population and circumstances shall warrant it, "a board of five persons of respectable standing, to be known as commissioners of pilotage." Upon this board power is conferred to fix, within the maximum limits provided by law, the charges to be made by branch and deputy pilots for their services, to regulate the manner

in which such pilots shall perform their duty, to examine them as to their qualifications, to hear complaints made against them, and, if occasion requires, to suspend them until the governor shall act in the matter. Upon the governor is conferred the authority to appoint such number of branch pilots as may from time to time be necessary, each of whom shall hold office for two years, subject to removal by the governor at pleasure, and any one who is not a duly commissioned branch pilot or deputy thereof is prohibited from engaging in the business of pilotage so far as the statutes provide for pilotage services by the duly appointed pilots. Revised Statutes of the State of Texas for 1895, articles 3790, 3791, 3792, 3793, 3794, 3796 and 3803. The maximum rates of pilotage are provided for as follows:

"The rate of pilotage on any class of vessels shall not, in any port of this state, exceed four dollars for each foot of water which the vessel at the time of piloting draws, and whenever a vessel, except of the classes below excepted, shall decline the services of a pilot, offered outside the bar, and shall enter the port without the aid of one, she shall be liable to the first pilot whose services she so declined, for the payment of half pilotage; and any vessel which, after being brought in by a pilot, shall go out without employing one, shall be liable to the payment of half pilotage to the pilot who brought her in, or, if she has come in without the aid of a pilot, though offered outside, she shall, on so going out, be liable for the payment of half pilotage to the pilot who had first offered his services before she came in, but if she has come in without the aid of a pilot, or the offer of one outside, she shall not, in case of going out without a pilot, be liable to half pilotage. . . ." Article 3800.

The vessels excepted from the operation of the foregoing provisions are thus stated in article 3801:

"The following classes of vessels shall be free from any charge for pilotage, unless for actual service, to wit: All vessels of twenty tons and under, all vessels of whatsoever burden

owned in the state of Texas and registered and licensed in the district of Texas, when arriving from or departing to any port of the state of Texas; all vessels of seventy-five tons and under, owned and licensed for the coasting trade in any part of the United States, when arriving from or departing to any port in the state of Texas; all vessels of seventy-five tons or under owned in the state of Texas and licensed for the coasting trade in the district of Texas when arriving from or departing to any port in the United States."

The first contention in effect is that the State was without power to legislate concerning pilotage, because any enactment on that subject is necessarily a regulation of commerce within the provision of the Constitution of the United States. The unsoundness of this contention is demonstrated by the previous decisions of this court, since it has long since been settled that even although state laws concerning pilotage are regulations of commerce, "they fall within that class of powers which may be exercised by the States until Congress has seen fit to act upon the subject." *Cooley* v. *Board of Wardens*, 12 How. 299; *Ex parte McNiel*, 13 Wall. 236; *Wilson* v. *McNamee*, 102 U. S. 572.

The second proposition relied on is that, albeit the State had power to legislate concerning pilotage until Congress acted, the state laws are void because in conflict with the laws enacted by Congress. This is based upon two provisions of the Revised Statutes of the United States, the one providing "that no regulations or provisions shall be adopted by any State which shall make any discrimination in the rate of pilotage or half pilotage between vessels sailing between the ports of one State and vessels sailing between the ports of different States, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the United States, and all existing regulations or provisions making any such discrimination are annulled and abrogated," Rev. Stat. § 437; the other being the provision of the statutes, Rev. Stat. § 1444, exempting coastwise steam vessels from the operation

of state pilotage laws.   Undoubtedly the exempting clause of
the Texas statute is discriminatory, and is therefore void, be-
cause in conflict with the law of the United States.   The court
below so decided.   It held, however, that the provisions dis-
criminating in favor of Texas ships and ports were separable
from the remainder of the statutes, and therefore the general
regulations concerning pilotage were valid, although the dis-
criminating provisions were eliminated.   Whether the illegal
clauses granting discriminatory exemptions could be eliminated
without destroying the other provisions of the state laws
regulating pilotage, is a State and not a Federal question.
For the purpose of determining the validity of the statutes
in their Federal aspect this court accepts the interpretation
given to the statutes by the state court and tests their validity
accordingly.   *W. W. Cargill Co.* v. *Minnesota,* 180 U. S. 452,
466, and authorities there cited.   True it is in *Spraigue* v.
*Thompson,* 118 U. S. 90, a case involving the pilotage laws of
Georgia, in the course of the opinion it was remarked (p. 95)
that the ruling of the Supreme Court of the State of Georgia,
that the illegal provision of the statute in question was separa-
ble, caused the statute "to enact what confessedly the legis-
lature never meant."   But this remark was not made the
basis of the conclusion, since it was decided in that case that
the pilotage charge in question was invalid, even under the
construction given by the Supreme Court of the State of
Georgia to the state statute, because the exaction which was
in controversy was in conflict with the provisions of the Re-
vised Statutes of the United States, exempting coastwise
steam vessels from pilotage charges.   In any event, it is ap-
parent that the observation referred to, made in the case of
*Spraigue* v. *Thompson,* has been qualified by the later de-
cisions of this court to which we have previously referred.

Of course, whilst accepting the construction of the state
court as to the divisibility of the statute, the duty yet re-
mains, for the purpose of the Federal question, to determine
whether the statute as construed is valid.   As the effect of

the construction below was to eliminate the discrimination from the statute, it is clear, in view of the power of the State to legislate concerning pilotage until Congress acts upon the subject, that the statutes, as interpreted below, were within the power of the State and not in conflict with any act of Congress. Indeed, it is obvious from the provisions of the Revised Statutes, sec. 4237, forbidding discrimination in state legislation concerning pilotage, that Congress did not intend by that section to revoke the power of the States on the subject or to abrogate existing pilotage laws of the several States containing discriminatory provisions, but only to abrogate the provisions making the discrimination. This results since the statute, after first generally prohibiting regulations by any State discriminating "in the rate of pilotage or half pilotage between vessels sailing between the ports of one state and vessels sailing between the ports of different states, or any discrimination against vessels propelled in whole or in part by steam, or against national vessels of the United States," in careful language annuls and abrogates only "all existing regulations or provisions making any such discrimination." And this construction of the section in question disposes also of the argument that if the statute be accepted as interpreted by the state court, it is nevertheless repugnant to the law of the United States, since, if the exceptions found in the state statutes are eliminated, then those statutes impose pilotage charges upon all vessels, and hence subject coastwise steam vessels of the United States to such charges, although they are expressly exempted therefrom. Revised Statutes, § 4444. But the provisions of that section clearly contemplated that by the existing state laws, coastwise steam vessels of the United States were subject to pilotage charges, and proposed, whilst withdrawing such vessels from pilotage charges, not in other respects to interfere with the state laws on the subject of pilotage. This is plainly the result of the following provision contained in the section in question:

"Nothing in this Title shall be construed to annul or affect

any regulation established by the laws of any State, requiring vessels entering or leaving a port in any such State other than coastwise steam vessels, to take a pilot duly licensed or authorized by the laws of such State."

Nor is there merit in the contention that, as the vessel in question was a British vessel coming from a foreign port, the state laws concerning pilotage are in conflict with a treaty between Great Britain and the United States, providing that "No higher or other duties or charges shall be imposed in any ports of the United States on British vessels than those payable in the same ports by vessels of the United States." Neither the exemption of coastwise steam vessels from pilotage, resulting from the law of the United States, nor any lawful exemption of coastwise vessels created by the state law, concerns vessels in the foreign trade, and, therefore, any such exemptions do not operate to produce a discrimination against British vessels engaged in foreign trade and in favor of vessels of the United States in such trade. In substance the proposition but asserts that because by the law of the United States steam vessels in the coastwise trade have been exempt from pilotage regulations, therefore there is no power to subject vessels in foreign trade to pilotage regulations, even although such regulations apply, without discrimination, to all vessels engaged in such foreign trade, whether domestic or foreign.

It remains only to consider the contention based upon the Fourteenth Amendment and the anti-trust laws of Congress. The argument is, that the right of a person who is competent to perform pilotage services to render them is an inherent right guaranteed by the Fourteenth Amendment, and that therefore all state regulations providing for the appointment of pilots and restricting the right to pilot to those duly appointed, are repugnant to the Fourteenth Amendment. But this proposition in its essence simply denies that pilotage is subject to governmental control, and therefore is foreclosed by the adjudications to which we have previously referred. The contention that because the commissioned pilots have a

monopoly of the business, and by combination among themselves exclude all others from rendering pilotage services, is also but a denial of the authority of the State to regulate, since if the State has the power to regulate, and in so doing to appoint and commission, those who are to perform pilotage services, it must follow that no monopoly or combination in a legal sense can arise from the fact that the duly authorized agents of the State are alone allowed to perform the duties devolving upon them by law. When the propositions just referred to are considered in their ultimate aspect they amount simply to the contention, not that the Texas laws are void for want of power, but that they are unwise. If an analysis of those laws justified such conclusion—which we do not at all imply is the case—the remedy is in Congress, in whom the ultimate authority on the subject is vested, and cannot be judicially afforded by denying the power of the State to exercise its authority over a subject concerning which it has plenary power until Congress has seen fit to act in the premises.

*Affirmed.*