## APPEAL OF EMMA B. BRUNNER, EXECUTRIX, ESTATE OF ARNOLD W. BRUNNER.

### Docket No. 3719.    Promulgated January 20, 1927.

1. The decedent, an architect, was engaged by contracts between himself and the Commonwealth of Pennsylvania and the cities of Albany and New York, N. Y., for work, not permanent or continuous in character, in connection with construction and alterations of public buildings and the construction of a bridge. His duties were prescribed and his compensation fixed by the contracts. *Held,* that the compensation paid to him was subject to Federal income tax.

2. The salary received by the decedent from the City of Cleveland, Ohio, as a member of the Board of Supervisors in the Erection of Public and Municipal Buildings in Cleveland, Ohio, to which office he was appointed and commissioned by the Governor of Ohio under authority of an act of the General Assembly of that State, was exempt from Federal taxation.

*Lewis M. Isaacs, Esq.,* for the petitioner.
*A. R. Marrs, Esq.,* for the Commissioner.

This is an appeal from the determination of deficiencies in income tax for the calendar years 1917 to 1922, inclusive, as follows:

| | |
|---|---:|
| 1917 | $2,653.96 |
| 1918 | 2,226.02 |
| 1919 | 11,672.95 |
| 1920 | 5,537.92 |
| 1921 | 17,776.80 |
| 1922 | 17,141.80 |
| Total | 57,009.45 |

The question presented is whether certain amounts received by decedent from the Commonwealth of Pennsylvania and the cities of Cleveland, Ohio, Albany and New York, N. Y., were subject to income tax.

### FINDINGS OF FACT.

Arnold W. Brunner died a resident of New York in 1924. He was an architect of wide experience, especially in the field of planning public buildings. He was employed by the Commonwealth of Pennsylvania and the municipalities of Cleveland, Ohio, Albany and New York, N. Y., to perform certain services for the Commonwealth of Pennsylvania in the designing and laying out of Capitol Park, and the planning and supervising of alterations to, and the construction of certain State buildings at Harrisburg, Pa., and by the municipalities of Cleveland, Ohio, Albany and New York, N. Y., and to perform similar work in connection with municipal buildings. In addition, he was employed by the Commonwealth of Pennsylvania to furnish drawings and to supervise the construction of the Soldiers' and Sailors' Memorial Bridge at Harrisburg.

The facts concerning these several transactions and the compensation received therefor were as follows:

*Pennsylvania.*—On December 7, 1916, the Governor, the Auditor General, and the Treasurer, of the Commonwealth of Pennsylvania, constituting the Board of Commissioners of Public Grounds and Buildings, entered into an agreement with the decedent as follows:

WHEREAS, it has been determined, pursuant to law, by the parties hereto that a contract of employment of Arnold W. Brunner, as designer for the Capitol Grounds of Harrisburg, Pennsylvania, shall be made directly between the Board of Public Grounds and Buildings and the said Arnold W. Brunner.

NOW THIS AGREEMENT WITNESSETH:

That the said Arnold W. Brunner, party of the second part, for the consideration hereinafter mentioned and agreed to be paid to him by the party of the first part, acting in behalf of the Commonwealth of Pennsylvania, doth hereby, for himself, his heirs, executors and administrators, covenant, promise, stipulate and agree with the Commonwealth of Pennsylvania that he will complete, within two years from the date of this contract, the following work:

That the said Arnold W. Brunner will act as designer for the Capitol Grounds at Harrisburg, Pennsylvania, and make general studies of the various solutions of the work there to be done; he will present the best of these studies to the party of the first part for discussion and approval, so that the various questions that arise may be carefully considered before final drawings are made; he will make drawings showing the general plan, with elevations, sections and perspectives, and numerous explanatory sketches. These will indicate the entire scheme, showing the location, general outline, and controlling characteristics of the buildings, location of trees, foliage, lawns, walks, etc. He will make working drawings of the steps, balustrades, terraces, etc., and sketches of important features of design that cannot be shown on the main drawings. The drawings for the buildings will not be working drawings,

but will be sufficient to clearly indicate their architectural character and general disposition. It is understood that the drainage and all underground work will be done by the Commonwealth of Pennsylvania.

The said work will include designs for—

The approach from the west to the plaza in front of the Capitol Building.

The illumination of the Capitol Grounds.

The planning of the streets bordering the Capitol Grounds.

The planning of offices accommodating approximately 150,000 square feet of available floor space.

The location for future buildings to include an Educational Building; a Laboratory Building, a Printing Binding, Storage and Distribution of Documents Building and a Power Plant.

He will also advise about the character of the Armory Buildings or other buildings to be erected on streets bordering on the Capitol Grounds. He will employ Mr. Warren H. Manning, as Consulting Landscape Architect, for which employment the Commonwealth of Pennsylvania is to allow him Two Thousand Five Hundred Dollars ($2,500.00) per year, which is to be paid to the party of the second part and by him turned over to Mr. Warren H. Manning. The Commonwealth of Pennsylvania is to pay the cost of the preparation of the drawings, which is not to exceed the sum of Five Thousand Dollars ($5,000.00) per year, and is also to pay the cost of traveling and subsistence between their homes and Harrisburg, Pennsylvania, and while in Harrisburg, of the said party of the second part, Mr. Warren H. Manning and their employees while engaged in labor for the Commonwealth of Pennsylvania.

The party of the second part shall and will proceed with the said undertaking in a prompt and diligent manner, and shall and will let and complete said work according to the terms of this contract, within two years from the date hereof unless prevented by illness or other unavoidable necessity.

The party of the second part shall not assign or transfer this contract or any interest therein without the written consent of the Board of Commissioners of Public Grounds and Buildings. * * *

It is mutually agreed between the parties hereto that the sum to be paid by the Commonwealth of Pennsylvania to the said Arnold W. Brunner for the undertaking herein indicated, set forth and described shall be the sum of Ten Thousand Dollars ($10,000.00) per year for two years, payable quarterly, also quarterly payments of the cost of the preparation of drawings, as above provided and to the said Arnold W. Brunner, for the employment of Warren H. Manning, the sum of Two Thousand Five Hundred Dollars ($2,500.00) per year for the period of two years, said payments to be made quarterly, and at the time of making quarterly payments, the traveling expenses and subsistence of the said Arnold W. Brunner and Mr. Warren H. Manning shall also be paid by the Commonwealth of Pennsylvania.

The said party of the second part hereby agrees with the said party of the first part that he will at all times during the continuance of this contract, and until the final acceptance of the work herein undertaken by him, be under good and sufficient bond with sureties satisfactory to the party of the first part in the sum of Twenty Thousand Dollars ($20,000.00) conditioned for the faithful performance and fulfillment in all respect of this contract.

On March 12, 1919, decedent's employment was continued for another year and on March 30, 1920, for two years, at the same salary.

In January, 1922, his employment was continued for two years from January 1, 1922, at a salary of $4,000 per annum.

For the performance of the work specified in the foregoing contract, the decedent received the following compensation from the Commonwealth:

| | |
|---|---:|
| 1917 | $7,500 |
| 1918 | 12,500 |
| 1919 | 7,500 |
| 1920 | 7,500 |
| 1921 | 12,500 |
| 1922 | 6,500 |

On June 16, 1919, the Legislature passed an act (P. L. 243) relating to the Board of Commissioners of Public Grounds and Buildings, sections 45–48 thereof providing as follows:

Section 45. It shall be the duty of the board, in connection with the expenditure of each and every fund appropriated by legislative act for the building, repairing, or improving of State institutions, to employ, for each separate construction, a capable superintendent of construction, under whose personal supervision such funds shall be expended.

Section 46. It shall be the duty of the superintendent of construction, in case of the erection of new buildings and in case of repairs or additions being made to present buildings, to give his time and personal supervision to the work under process of construction, in order that the State shall receive full value for the amount of expenditure to be so made.

In case of the erection of new buildings and repairs and additions being made to present buildings, it shall be the duty of the superintendent of construction to see that the plans and specifications of the architect prepared and adopted for such new buildings, additions, and repairs, shall be faithfully carried out by the contractor for the work. He shall define, determine, and decide all questions of the proper interpretation of the plans and specifications which may be raised by the contractor or architect during the progress of the work.

Section 47. The superintendent of construction shall be the direct representative of the State, and shall be responsible to, and be required to report to, the board, at such times and in such manner as may be prescribed by the board, as to the progress of, and condition of, the work under his charge.

Section 48. The superintendent of construction shall be paid a per diem salary out of the fund appropriated for the improvement which he is to supervise in like manner as superintendents are now paid out of the said fund by the architect or trustees of the institution so benefited.

The amount of compensation to be paid to the superintendent of construction, together with the term of his office, shall be determined by the board, and the superintendent of construction shall be required to give bond to the Commonwealth, in such amount as the board shall deem sufficient, for the faithful performance of his duties.

On August 5, 1919, the Board of Commissioners of Public Grounds and Buildings entered into the following agreement with the decedent:

WHEREAS, it has been determined, pursuant to law, by the parties hereto that a contract of employment of Arnold W. Brunner, as Architect for the Terraces bordering the Forecourt at East of Capitol, the Office Space under the Terraces, and the two Office Buildings in Capitol Park, at Harrisburg,

Pennsylvania, shall be made directly between the Board of Public Grounds & Buildings and the said Arnold W. Brunner.

NOW THIS AGREEMENT WITNESSETH: That the said Arnold W. Brunner, party of the second part, for the consideration hereinafter mentioned and agreed to be paid to him by the party of the first part, acting in behalf of the Commonwealth of Pennsylvania, doth hereby for himself, his heirs, executors and administrators, covenant, promise, stipulate and agree with the Commonwealth of Pennsylvania that he will complete in the shortest possible time consistent with accuracy and efficiency, the following work:

All preliminary drawings, working drawings, full size details, specifications and superintendence for the Terraces, Office Space and the two Office Buildings at Harrisburg, Pennsylvania.

In consideration of the party of the second part performing the work agreed upon, the party of the first part agrees to pay to the party of the second part as compensation for his services, a fee of six (6%) per cent on the total cost of the Terraces, Office Space and the two Office Buildings.

Payments shall be made by the party of the first part to the party of the second part as follows:

(a) Upon completion of preliminary studies, one (1%) percent of the estimated cost of the work.

(b) Upon completion of working drawings and specifications ready for securing bids, two (2%) percent of the estimated cost.

(c) Upon completion of detail drawings one (1%) percent of the estimated cost.

(d) One (1%) percent, when one-half of the sum due shall be paid to the contractor, and the balance, one (1%) percent, subject to the adjustment between the estimated and actual cost, is to be paid upon the completion and final acceptance of the work.

The party of the second part agrees to make a deduction of Twenty Thousand ($20,000) Dollars from the amount of this contract in consideration of the sketches, studies, etc., for the Terraces and Office Buildings already included in his designs for Capitol Park, $10,000 of which is to be deducted from the first payment under this contract and $10,000 from the second payment.

The party of the first part agrees to pay the salary of a competent Clerk of the Works, who shall be selected by and under the control of the party of the second part.

It is mutually agreed and understood that the party of the first part is to pay all Railroad and Pullman carfares to the said party of the second part between his home and Harrisburg, Pennsylvania, and the cost of board and lodging while in Harrisburg, and to pay also the Railroad and Pullman carfares and the cost of board and lodgment for all of the necessary employees of the party of the second part brought to Harrisburg in connection with said work, but it is understood that the party of the first part is not to pay the cost of subsistence of the Clerk of the Works while in Harrisburg, payments for traveling expenses, and board and lodging, to be made upon presentation of the proper vouchers.

The party of the second part shall not assign or transfer this contract or any interest therein without the written consent of the Board of Commissioners of Public Grounds & Buildings.

\*      \*      \*      \*      \*      \*      \*

The compensation received by the decedent for the work specified in the above-mentioned agreements will be included in the amounts

received for services rendered in connection with the Soldiers' and Sailors' Memorial Bridge hereinafter mentioned.

Pursuant to the legislative authority, the Board of Commissioners of Public Grounds and Buildings on April 8, 1919, employed the decedent to furnish plans and drawings and supervise the construction of the Soldiers' and Sailors' Memorial Bridge, by agreement as follows:

WHEREAS, it has been determined, pursuant to law, by the parties hereto that a contract of employment of Arnold W. Brunner and J. E. Greiner & Company, as Architect and Engineers for the Soldiers' and Sailors' Memorial Bridge, at Harrisburg, Pennsylvania, shall be made directly between the Board of Public Grounds and Buildings and the said Arnold W. Brunner and J. E. Greiner & Company.

NOW THIS AGREEMENT WITNESSETH:

That the said Arnold W. Brunner and J. E. Greiner & Company, parties of the second part, for the consideration hereinafter mentioned and agreed to be paid to them by the party of the first part, acting in behalf of the Commonwealth of Pennsylvania, do hereby for themselves, their heirs, executors and administrators, covenant, promise, stipulate, and agree with the Commonwealth of Pennsylvania, that they will complete in the shortest possible time consistent with accuracy and efficiency the following work:

All architectural and engineering services in connection with the preparation of the necessary surveys, preliminary studies, general drawings, plans, specifications and detailed working drawings for the Soldiers' and Sailors' Memorial Bridge at Harrisburg, Pa., and its approaches, and also all necessary and requisite architectural and engineering services in the carrying out of the same, including the supervision and detailed inspection of the construction thereof until completion.

In consideration of the parties of the second part performing the work agreed upon the party of the first part agrees to pay to the parties of the second part as compensation for their services, a fee of six (6) per cent, of the actual total cost of the bridge constructed complete as covered by the plans and specifications, excepting only the cost of the sculpture and the interior memorial decoration of the pylons and cost of field inspection.

Payments shall be made by the party of the first part to the parties of the second part, as follows:

(a) Upon the completion of the surveys, situation plans and the approval of the preliminary studios, one (1%) per cent, of the estimated cost.

(b) Upon the completion of the plans and specifications ready for obtaining bids, excepting the pylons and architectural treatment above the floor level, two (2%) per cent of the estimated cost.

(c) Upon the completion of the detailed working plans for the various parts of the structure, including the pylons and architectural treatment above the level of the floor one (1%) per cent, of the estimated cost.

(d) One (1%) per cent, when one-half of the sum due shall be paid to the contractor, and the balance, one (1%) per cent, subject to the adjustment between the estimated and actual cost, is to be paid upon the completion and final acceptance of the bridge.

The parties of the second part further agree to design and prepare all drawings for and superintend the Memorial Interiors of the pylons, the pedestals, etc., for the sculpture so as to harmonize the architecture and sculpture, and the party of the first part in compensation for this special work agrees to

pay to the parties of the second part a fee of ten (10) per cent of the total cost of the Memorial Interiors and Sculpture.

Payments shall be made by the party of the first part to the parties of the second part, as follows:

(a) When the drawings and specifications are ready for estimating, one-half of the commission based on the estimated cost.

(b) The balance when the work is completed ready for the sculpture.

The parties of the second part also agree to furnish all resident engineers, inspectors, clerks of the work, and such other persons as may be required for the proper supervision and management of the construction of said bridge, exclusive of the Memorial Interiors and Sculpture for the pylons, also including the cost of the maintenance of an office for the resident superintendent to be maintained at the works, and the party of the first part agrees to pay as compensation for the performance of this work the actual cost thereof to the parties of the second part, as evidenced by vouchers.

It is mutually agreed and understood that the party of the first part is to pay all traveling expenses and subsistence of the said parties of the second part between their homes and Harrisburg, Pa., and while in Harrisburg, and the traveling expenses and subsistence of their employees while engaged in labor in connection with the bridge but it is understood that the party of the first part is not to pay the cost of subsistence of resident engineers and superintendents while in Harrisburg. Payments to be made upon presentation of the proper vouchers. No extra fee shall be charged on this item by the party of the second part.

The parties of the second part shall not assign or transfer this contract, or any interest therein, without the written consent of the Board of Commissioners of Public Grounds and Buildings.

In case of the death or mental or physical disability of Arnold W. Brunner or J. E. Greiner, it is hereby agreed that this contract shall remain in force and that the survivor shall complete the architectural or engineering work of the Memorial Bridge with the office force, equipment and organization of the deceased or incapacitated party, and with such other associates satisfactory to the party of the first part as may be found necessary.

In case of the death or mental or physical disability of Arnold W. Brunner and J. E. Greiner and failure of the parties of the second part to comply with the terms of this agreement, or to complete the work herein stipulated to be performed by the parties of the second part, then and in such case the party of the first part shall have the right to the possession and use, until the work herein referred to is completed, of all sketches, drawings, plans, specifications, memoranda made or begun to be made by said parties of the second part in any way relating to the work referred to, and said sketches, drawings, plans, specifications and memoranda to be and remain the property of and to be returned to the parties of the second part or their legal representatives upon the completion of said work.

The work specified in the last three above mentioned contracts was performed by the decedent, and as compensation therefor he received the following net amounts after deducting office and other necessary expenses:

| | |
|---|---|
| 1919 | $41,249.52 |
| 1920 | 17,589.25 |
| 1921 | 45,290.00 |
| 1922 | 23,462.64 |

*Cleveland, Ohio.*—On May 6, 1902, the General Assembly of the State of Ohio enacted a statute providing as follows:

Section 1. That whenever any city in the state of Ohio, having a population of more than 380,000, or the county in which the city is located, contemplates the erection of buildings for public, municipal, or county purposes within the boundaries of such city, such city by its council may request the governor of the state of Ohio to appoint a board of supervision composed of three experts, two at least of whom shall be architects, the members of which board shall receive salaries not exceeding five thousand dollars each per annum, to be fixed by the city authorities prior to making request upon the governor for appointment and paid by the city requesting such appointment.

Section 2. Such board when appointed shall have the supervision and control of the location of all public, municipal or county buildings to be erected upon ground previously acquired within the limits of the city, and shall have control of the size, height, style and general appearance of all such buildings, for the purpose of procuring, in their location and erection, the greatest degree of usefulness, safety and beauty.

Section 3. No plans shall be adopted and no work carried on by such city or county, wherein such board shall be appointed, in the erection of such public, municipal or county buildings within the boundaries of such city, until all plans, specifications and locations shall have first been submitted to and approved by such board or a majority thereof.

Section 4. Such board shall be appointed for such time as shall be requested by the city, and the governor, at the request of the city, may remove any member of such board and appoint a new member to fill the vacancy thus created, if in his judgment it is wise so to do.

Pursuant thereto the Governor of Ohio on June 20, 1902, appointed and commissioned the decedent a member of the Board of Supervisors in the erection of public and municipal buildings, as evidenced by the following agreement:

TO ALL TO WHOM THESE PRESENTS SHALL COME GREETING:

KNOW YE, That whereas, ARNOLD W. BRUNNER of NEW YORK COUNTY, NEW YORK, has been duly appointed to the office of MEMBER OF THE BOARD OF SUPERVISORS IN THE ERECTION OF PUBLIC AND MUNICIPAL BUILDINGS IN CLEVELAND, OHIO:

THEREFORE, By virtue of the authority vested in the Governor by the Constitution, and in pursuance of a provision of the Statutes, I do hereby Commission him, the said ARNOLD W. BRUNNER, to be MEMBER OF SAID BOARD, authorizing and empowering him to execute and discharge, all and singular, the duties appertaining to said office, and to enjoy all the privileges and immunities thereof.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused the Great Seal of the State of Ohio to be affixed at Columbus, the 20 day of June in the year of our Lord one thousand nine hundred and two.

(Sgd)        GEO. K. NASH.

(SEAL)    (Sgd)        LEWIS C. LAYLIN
*Secterary of State.*

The salary attached to this office, originally $5,000 per annum, was reduced during the years involved to $1,000 per annum. The

decedent performed the duties of the office and the amounts received as compensation therefor were as follows:

| | |
|---|---:|
| 1917 | $250.00 |
| 1918 | 2,000.00 |
| 1919 | 500.00 |
| 1920 | 1,000.00 |

*Albany, N. Y.*—On January 15, 1912, the Common Council of the City of Albany, N. Y., enacted an ordinance authorizing the Commissioner of Public Works to employ an expert to prepare a City plan, reading in part as follows:

Section 1. The Commissioner of Public Works is hereby authorized and empowered to employ an expert who shall prepare a design or plan which shall be a guide and aid to the city authorities in carrying into effect public improvements. Such design or plan shall show such matters relating to streets, parks and other public places; public buildings, works of art, and other structures intended for the beautification of the city; the arrangement of street and other railroads, including the appurtenances thereto; the location and plans of residences and other buildings, and such other matters as may properly be included in such design or plan.

   \*      \*      \*      \*      \*      \*      \*

Section 3. Whenever the expert shall have completed a design or plan he shall submit the same to the Commissioner of Public Works, together with such explanation thereof as may be necessary, and the same shall be filed with the Commissioner of Public Works and become a public record.

Section 4. The sum of five thousand dollars ($5,000) or so much thereof as may be necessary is hereby appropriated out of any moneys in the city treasury derived from any source other than by municipal tax, and not otherwise appropriated, to pay the expenditures authorized by this ordinance.

On April 29, 1912, the Commissioner of Public Works advised the decedent as follows:

In accordance with the authority of an ordinance of the Common Council passed January 15, 1912, I herewith accept your proposal to act as an expert for the City of Albany, in carrying into effect certain public improvements for the fee, or honorarium, of five thousand dollars ($5,000) per year, the City to pay the cost of traveling expenses, draftsmanship and other expenses in connection with the preparation of the necessary drawings.

I sent you a few days ago two copies of the Chamber of Commerce Report and the plans and specifications for the Recreation Pier, for which I have your acknowledgment of April 26.

In a few days I will send you a plan of the river front improvement at a scale of 40 feet to the inch and a plan of the entire city at a scale of 400 feet to the inch.

On February 3, 1915, the decedent was advised of his employment by the Board of Estimate and Apportionment of the City of Albany, as follows:

The Board of Estimate and Apportionment yesterday decided to retain you at the nominal salary of $1,000 a year and expenses. Of course if the duties

should be larger than we anticipate the matter of compensation can be adjusted.

The decedent accepted such employment on February 4, 1915.

On April 3, 1917, the Board of Contract and Supply of the City of Albany, composed of the Mayor, Comptroller, Commissioner of Public Works, Corporation Counsel and the City Engineer, appointed the decedent Consulting Architect for the alterations in the City Hall, and advised him of such action, as follows:

At a meeting of the Board of Contract and Supply held April 2nd, you were formally appointed consulting architect for the alterations to the City Hall and your fee was fixed at one and one-half (1½%) per cent on the total cost of the building, with traveling expenses.

I am advising Messrs. Ogden & Gander, the architects to the same effect.

The decedent accepted this employment and performed the services required.

For the personal services rendered under his employment, decedent received the following compensation:

| | |
|---|---|
| 1917 | $3, 277. 65 |
| 1918 | 3, 500. 00 |
| 1919 | 1, 000. 00 |
| 1920 | 1, 000. 00 |
| 1921 | 1, 000. 00 |
| 1922 | 416. 66 |

*New York, N. Y.*—The decedent performed certain services for the City of New York in connection with city planning. He received $124.85 during 1917 and $24.36 during 1918.

## OPINION.

LITTLETON: It is contended by the executrix that Arnold W. Brunner was an officer or an employee of the Commonwealth of Pennsylvania and the municipalities of New York and Albany, N. Y., and Cleveland, Ohio, and that compensation received by him from such States and municipalities was exempt from Federal taxation.

In the opinion of the Board the decedent was not an officer or employee of the Commonwealth of Pennsylvania or the municipalities of New York and Albany, N. Y., within the meaning of the statute and decisions of the courts that compensation of officers or employees of States and municipalities is not subject to Federal income tax. The decedent was not a part of the regular governmental force of the Commonwealth of Pennsylvania or the municipalities of New York and Albany. He was an independent contractor and his rights, duties, and compensation were fixed by the contracts. The case of *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, involved the question whether compensation received by consulting engineers

under contracts with certain municipalities was taxable under the provisions of the Revenue Act of 1917. The court said (p. 519):

We think it clear that neither of the plaintiffs in error occupied any official position in any of the undertakings to which their writ of error in No. 183 relates. They took no oath of office; they were free to accept any other concurrent employment; none of their engagements was for work of a permanent or continuous character; some were of brief duration and some from year to year, others for the duration of the particular work undertaken. Their duties were prescribed by their contracts and it does not appear to what extent, if at all, they were defined or prescribed by statute. We therefore conclude that plaintiffs in error have failed to sustain the burden cast upon them of establishing that they were officers of a state or a subdivision of a state within the exception of § 201 (2).

At page 524 the court further stated:

* * * But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way. *Railroad Co.* v. *Peniston; Gromer* v. *Standard Dredging Co.; Baltimore Shipbuilding Co.* v. *Baltimore; Fidelity & Deposit Co.* v. *Pennsylvania; Choctaw, O. & G. R. R. Co.* v. *Mackey, supra.*

As was said by this Court in *Baltimore Shipbuilding Co.* v. *Baltimore, supra,* in holding that a state might tax the interest of a corporation in a dry dock which the United States had the right to use under a contract entered into with the corporation:

" It seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from state taxation either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time." (p. 382.)  [25 Sup. Ct. 52.]

And as was said in *Fidelity & Deposit Co.* v. *Pennsylvania, supra,* in holding valid a state tax on premiums collected by bonding insurance companies on surety bonds required of United States officials:

" But mere contracts between private corporations and the United States do not necessarily render the former essential government agencies and confer freedom from state control." (p. 323.)  [36 Sup. Ct. 300.]

These statements we deem to be equally applicable to private citizens engaged in the general practice of a profession or the conduct of a business in the course of which they enter into contracts with government from which they derive a profit. We do not suggest that there may not be interferences with such a contract relationship by means other than taxation which are prohibited. *Railroad Co.* v. *Peniston, supra,* at p. 36, recognizes that there may. Nor are we to be understood as laying down any rule that taxation might not affect agencies of this character in such a manner as directly to interfere with the

functions of government and thus be held to be void. See *Railroad* v. *Peniston, supra,* page 36; *Farmers Bank* v. *Minnesota, supra,* p. 522; *Choctaw & Gulf Railway Co.* v. *Harrison, supra,* p. 272.

But we do decide that one who is not an officer or employee of a state, does not establish exemption from federal income tax merely by showing that his income was received as compensation for service rendered under a contract with the state; and when we take the next step necessary to a complete disposition of the question, and inquire into the effect of the particular tax, on the functioning of the state government, we do not find that it impairs in any substantial manner the ability of plaintiffs in error to discharge their obligations to the state or the ability of a state or its subdivisions to procure the services of private individuals to aid them in their undertakings. Cf. *Central Pacific Railroad* v. *California,* 162 U. S. 91, 126 [16 Sup. Ct. 766; 40 L. Ed. 903].

In the opinion of the Board the facts in this appeal, so far as it relates to the compensation received by the decedent from the Commonwealth of Pennsylvania and New York and Albany, N. Y., bring it within the decision of the court in *Metcalf & Eddy* v. *Mitchell, supra.* The Commissioner's determination in this regard is therefore approved. See, also, *Lyons* v. *Reinecke,* 10 Fed. (2d) 3.

As to the compensation received by the decedent from the City of Cleveland, Ohio, a different situation exists. On June 20, 1902, he was appointed and commissioned by the Governor of Ohio as a member of the Board of Supervisors in the Erection of Public and Municipal Buildings in Cleveland, Ohio. This was a statutory office which he held subject to the pleasure of the Governor. He held this office and performed the duties thereof from 1902 to and including 1920.

It was not in his individual or private capacity that he performed the duties of the office as a member of the Board of Supervisors. He was not a contractor to perform work for the municipality. His rights, duties, habiliments, and emoluments of office were fixed and prescribed by statute and the commission of the Governor under authority of the constitution of the State.

When the decedent was commissioned as a member of the Board of Supervisors he became an instrumentality of the municipality in the performance of its governmental duties in the general administration of affairs incident to every state or municipal government. States and municipalities, like other corporate bodies, can act and perform their functions only through their duly authorized agents, and one who holds an office such as this decedent held, barren of any contractual relation, his acts in the discharge of his duties are the acts of the State or municipality in the performance of those functions, upon which the Federal Government may not place a burden through taxation. The nature of the decedent's relation to the municipality of Cleveland was not changed by the fact that the duties of the

office were not so arduous as entirely to preclude the carrying on generally by him of his profession as an architect.

We think the decedent was an agency through which the municipality immediately and directly exercised its sovereign powers; that he was so intimately connected with the exercise of power and the performance of a public duty by the municipality as to bring him within the purview of those decisions holding that the Federal Government may not tax the instrumentalities of a State or a subdivision thereof, and that, as such instrumentality, his income, to the extent that it was derived from such source, was immune from taxation. Section 201 (a) of the Revenue Act of 1917 and section 1211 of the Revenue Act of 1926.

> *Judgment will be entered on 15 days' notice, under Rule 50.*