John J. BRECHTEL et al.

v.

**BOARD OF EXAMINERS OF BAR PILOTS FOR the PORT OF NEW ORLEANS et al.**

**CA 13938.**

United States District Court
E. D. Louisiana,
New Orleans Division.
May 29, 1964.

---

H. Charles Gaudin, Gaudin & Edwards, Gretna, Hilary J. Gaudin, New Orleans, for plaintiffs.

Jack P. F. Gremillion, Atty. Gen., State of La., John E. Jackson, Jr., and L. K. Clement, Jr., Asst. Attys. Gen., for defendant, State of Louisiana, Jimmie H. Davis, Governor and Wade O. Martin, Jr., Secretary of State, State of Louisiana.

Joseph W. Nelkin, Irwin, Seelig & Nelkin, New Orleans, for defendant Board of River Port Pilot Commissioners for the Port of New Orleans.

S. W. Plauche, Lake Charles, for defendant Board of Examiners of Bar Pilots for the Port of New Orleans.

Julian B. Humphrey, New Orleans, for defendant Board of New Orleans and Baton Rouge Steamship Pilot Commissioners.

FRANK B. ELLIS, District Judge.

The plaintiffs in this litigation are ten licensed and experienced river pilots, holding licenses from the United States government. They assert that they are experienced and well-qualified; have been engaged as pilots in the Mississippi River and other waters and waterways for a considerable number of years; are of good moral character and are members of the Associated Federal Coast Pilots of Louisiana, Inc.

The defendants are the Board of Examiners of the Bar Pilots for the Port of New Orleans, Board of River Port Pilot Commissioners for the Port of New Orleans, Board of New Orleans and Baton Rouge Steamship Pilot Commissioners for the Mississippi River, Honorable Jimmie H. Davis, Governor of the State of Louisiana, and the Honorable Wade O. Martin, Jr., Secretary of State and the State of Louisiana.

The Boards are all creatures of Title 34, Louisiana Revised Statutes of 1950:

"§ 942. Board of examiners; appointment, terms and compensation of members

"The Governor shall appoint three examiners to constitute the Board of Examiners of Bar Pilots for the Port of New Orleans, all of whom shall be bar pilots and shall have served as such for a minimum of five years preceding their appointment at the entrances of the Mississippi River into the Gulf of Mexico or the entrance of any other waterway connecting the City of New Orleans with the Gulf of Mexico or other outside waters; the examiners shall hold office for four years or until their successors are appointed and qualified, and shall perform their duties without compensation."

"§ 991. Board of River Port Pilot Commissioners; appointment, qualification and removal of members

"There is hereby created the Board of River Port Pilot Commissioners for the Port of New Orleans. The said board shall consist of three citizens appointed by the governor, with the advice and consent of the senate, selected from those pilots who have, for at least one year preceding their appointment, exercised the function of river port pilots from the head of the passes to New Orleans, Louisiana, upon sea-going vessels, and who have been commissioned as river port pilots. The governor, in appointing the said commissioners, shall designate the president of the board, and the said commissioners may be removed by the governor for cause which shall include matters and

things which are deemed to be prejudicial to the public interest or to the Port of New Orleans by the governor. The said commissioners shall take an oath to faithfully perform their duties."

"§ 1042. Board of steamship pilot commissioners; members; appointment; oath of office

"The governor shall appoint, by and with the advice and consent of the senate, three citizens who shall form the Board of New Orleans and Baton Rouge Steamship Pilot Commissioners for the Mississippi River from the port of New Orleans to and including the port of Baton Rouge and intermediate ports. The commissioners so appointed shall serve for a term of two years from July 1, 1942, and their successors shall be appointed by the governor, and shall serve for terms of two years. The commissioners shall continue in office until their successors are appointed and qualified. The first commissioners shall be appointed from those pilots who have, for at least one year immediately preceding, exercised the functions of river pilots from the port of New Orleans to and including the port of Baton Rouge and intermediate ports upon sea-going vessels; and thereafter the appointments shall be exclusively made from the pilots commissioned by virtue of this Part. The governor, in appointing the commissioners, shall designate the president of the board. The commissioners shall be removable by the governor for cause, and shall qualify by taking an oath of office."

The individual defendants are duly elected officials of the State of Louisiana.

Plaintiffs attack Sections 953, 959, 961, 996, 1002 and 1049 of Title 34 of the Louisiana Revised Statutes of 1950. The statutes in question read as follows:

"§ 953. Ships required to take pilots

"All ships and vessels inward or outward bound throughout the en-

trances of the Mississippi River or other inland waterway connecting the port of New Orleans with the Gulf of Mexico, or other outside waters, except those of one hundred tons or less lawfully engaged in the coasting trade of the United States, shall take a bar pilot when one is offered; and any ship or vessel refusing or failing to take a pilot shall be liable to the pilot thus offering for pilotage."

"§ 959. Acting as pilot without license; penalty

"No person who is not commissioned a bar pilot shall board any ship or vessel required to take a bar pilot, for the purpose of piloting, or to pilot or attempt to pilot the same; and no person or pilot shall board any such ship or vessel for the purpose of piloting, except from the pilot boats on the bar pilot stations. Whoever violates the provisions of this section shall be fined or imprisoned in the discretion of any court of competent jurisdiction."

"§ 961. Employing pilot without license; liability of vessel, master or owner

"When a vessel, inward or outward bound to or from the port of New Orleans employs as a pilot a person who is not a bar pilot when a bar pilot offers his services, the vessel, her captain and owners, shall forfeit the sum of five hundred dollars, with privilege on the vessel, to be recovered before any court of competent jurisdiction in the name, and for the benefit of the Charity Hospital of New Orleans."

"§ 996. Operating Territory

"The said river port pilots shall have the exclusive right to pilot vessels between New Orleans, Louisiana, and Pilottown, Louisiana, and within the Port of New Orleans between Southport and Mereauxville; within the Industrial Canal, between the Mississippi River and Lake Pontchartrain; within the Intracoastal

Canal, between the Industrial Canal and the turning basin at Micheaud, inclusive; also for any other inland waterway route connecting with the Port of New Orleans, provided, however, that nothing herein contained shall prevent an exchange of pilots at what is known as 'Quarantin Anchorage' or 'the point of general anchorage' between the pilots herein named and the pilots engaged in the piloting of vessels above Southport, nor shall anything herein provided engaged in piloting vessels above Southport from ending or beginning the pilotage from any wharf or the 'point' or 'general anchorage' in the Harbor of New Orleans. Acts 1952, No. 177, § 6."

"§ 1002. Violations and penalties

"Anyone attempting to exercise the functions herein vested in the said river port pilots, who has not been commissioned by the Governor, shall be fined not less than twenty-five dollars, nor more than two hundred dollars, or imprisoned not less than thirty days, nor more than four months, or both, at the discretion of the court in whose jurisdiction the offense is committed."

"§ 1049. Report of incompetency, carelessness, etc., of pilots; removal, suspension or reprimand; attempt to exercise functions without commission

"The board of commissioners shall report immediately to the governor all cases of incompetency, or carelessness, especially charges of incompetency or carelessness in connection with damages caused to or by the ship of which the pilot had charge, as well as all cases of neglect of duty, habitual drunkenness and gross violations of its rules. The governor shall, thereupon, refer the same for investigation to the board of commissioners, the members of which shall sit as investigators and report their findings to the governor, recommending, if justified, a penalty. Whereupon, the governor may remove, suspend, or reprimand in his discretion.

"Whoever attempts to exercise the functions of a pilot without having been commissioned by the governor, shall be fined not less than twenty-five dollars, nor more than two hundred dollars, or imprisoned for not less than thirty days nor more than four months, or both."

Plaintiffs allege that the preceding regulations and controls are unjust, arbitrary, illegal and void in that it creates and maintains a monopoly in the piloting profession in violation of 15 U.S.C. §§ 1 and 2; and that they deny to complainants equal protection of the laws and deprive them of the right to make a just, equitable living, all violative of the Fourteenth Amendment.

Plaintiffs further allege that the commissioning of pilots has been on a familial basis in almost every instance; that appointments and/or certifications have always been made on a personal basis; that in the vast majority of cases the appointees have had little experience as pilots and have been kinsmen of one or more of the pilots; and that membership as a commissioned pilot has been closed by the Board to all except those having the favor of the pilots themselves. Plaintiffs assert that this is all violative of the due process and equal protection clauses of the Fourteenth Amendment and that a monopoly was unlawfully created, trade was unlawfully restrained, competition has been eliminated and unfair competition created, all violative of Title 15, United States Code.

Plaintiffs pray that the statutes in question be declared unconstitutional, ask for damages, costs of this suit and reasonable attorney's fees as per the dictates of 15 U.S.C. § 15 and specially reserve their rights to injunctive relief as per the dictates of 15 U.S.C. § 26.

The matter is presently before the Court on motions by all parties defendant to dismiss in that plaintiffs have failed to state a claim upon which relief can be granted, Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C., for reasons

that the United States Supreme Court has already passed on the matter, citing Kotch et al. v. Board of River Port Pilot Commissioners for Port of New Orleans, et al., 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093.

In the Kotch case the Supreme Court did deal with the problem of commissioning pilots on the basis of consanguinial propinquity. After an elaborate discussion of the history and practice of pilotage, the court used the following language in holding that the statutes and the discriminatory application thereof were not repugnant to the equal protection clause of the Fourteenth Amendment:

"The practice of nepotism in appointing public servants has been a subject of controversy in this country throughout our history. Some states have adopted constitutional amendments or statutes, to prohibit it. These have reflected state policies to wipe out the practice. But Louisiana and most other states have adopted no such general policy. We can only assume that the Louisiana legislature weighed the obvious possibility of evil against whatever useful function a closely knit pilotage system may serve. Thus the advantages of early experience under friendly supervision in the locality of the pilot's training, the benefits to morale and *esprit de corps* which family and neighborly tradition might contribute, the close association in which pilots must work and live in their pilot communities and on the water, and the discipline and regulation which is imposed to assure the State competent pilot service after appointment, might have prompted the legislature to permit Louisiana pilot officers to select those with whom they would serve.

" * * * We are aware of no decision of this Court holding that the Constitution requires a state governor, or subordinates responsible to him and removable by him for cause, to select state public servants by competitive tests or by any other

particular method of selection. The object of the entire pilotage law, as we have pointed out, is to secure for the State and others interested the safest and most efficiently operated pilotage system practicable. We cannot say that the method adopted in Louisiana for the selection of pilots is unrelated to this objective. * * We do not need to consider hypothetical questions concerning any similar system of selection which might conceivably be practiced in other professions or businesses regulated or operated by state governments. It is enough here that considering the entirely unique institution of pilotage in the light of its history in Louisiana, we cannot say that the practice appellants attack is the kind of discrimination which violates the equal protection clause of the Fourteenth Amendment." 330 U.S. 552, at pages 563–564, 67 S.Ct. 910, at page 915.

Plaintiffs also allege that the acts and administration of the Boards violate the due process clause of the Fourteenth Amendment and the anti-trust laws, 15 U.S.C. §§ 1 and 2. Similar contentions were made in Olsen v. Smith, 195 U.S. 332, 25 S.Ct. 52, 49 L.Ed. 224. In that case it was asserted that the Galveston Pilot Association was such a combination creating a monopoly and preventing free competition in traffic or commerce between the States or with foreign nations, as to be void as violative of the anti-trust laws. It was also alleged that if a state deprives a citizen who is a skilled seaman, qualified to be a pilot, of his natural right to pursue his occupation it deprives him of the "liberty" and "property" guaranteed him by the Fourteenth Amendment.

In rejecting these arguments the Court stated:

"It remains only to consider the contentions based upon the 14th Amendment and the anti-trust laws of Congress. The argument is, that the right of a person who is competent to perform pilotage services to render them is an inherent right,

guaranteed by the 14th Amendment, and that therefore all state regulations providing for the appointment of pilots, and restricting the right to pilot to those duly appointed, are repugnant to the 14th Amendment. But this proposition in its essence simply denies that pilotage is subject to governmental control, and therefore is foreclosed by the adjudications to which we have previously referred. The contention that (because) the commissioned pilots have a monopoly of the business, and by combination among themselves exclude all others from rendering pilotage services, is also but a denial of the authority of the state to regulate, since, if the State has the power to regulate, and in so doing to appoint and commission those who are to perform pilotage services, it must follow that no monoply or combination in a legal sense can arise from the fact that the duly authorized agents of the state are alone allowed to perform the duties devolving upon them by law. When the propositions just referred to are considered in their ultimate aspect they amount simply to the contention, not that the Texas laws are void for want of power, but that they are unwise. If an analysis of those laws justified such conclusion,—which we do not at all imply is the case,—the remedy is in Congress, in whom the ultimate authority on the subject is vested, and cannot be judicially afforded by denying the power of the state to exercise its authority over a subject concerning which it has plenary power until Congress has seen fit to act in the premises." Olsen v. Smith, supra, 195 U.S. at pages 344–345, 25 S.Ct. at page 55.

Therefore, inasmuch as all questions of law have been previously passed upon by the Supreme Court in concise terms this Court is constrained to grant the motions and dismiss the action as to all defendants.

So ordered.