## WILSON v. McNAMEE.

1. An objection not taken in the court below cannot be considered here.
2. The pilot laws of the State of New York are not in conflict with the Constitution of the United States. *Ex parte McNiel* (13 Wall. 236) and *Cooley* v. *Board of Wardens of Port of Philadelphia* (12 How. 299) cited and reaffirmed.
3. The pilot may recover pilotage, although his services were tendered to, and refused by, the master of the vessel, when she was without the jurisdiction of the State.

ERROR to the Court of Appeals of the State of New York.

McNamee tendered his services as a licensed Sandy Hook pilot to conduct the schooner " E. E. Racket " by way of Sandy Hook to the port of New York. He was the first that offered his services. The tender was made at sea; about fifty miles from that port. The vessel was from a foreign port, sailing under register, and drew nine feet of water. The master refused to accept the services, and came into port without a pilot. McNamee demanded the compensation allowed by the local State law, and, payment having been refused, brought this suit and recovered judgment in the District Court of the city of New York for the First Judicial Circuit against Wilson, the consignee of the schooner. The case was thereupon removed by appeal to the proper Court of Common Pleas, and subsequently to the Court of Appeals of the State. Those courts successively affirmed the judgment. Wilson sued out this writ.

The laws of New York on the subject of pilotage contain, among other provisions, the following : —

" All masters of foreign vessels, and vessels from a foreign port, and all vessels sailing under register, bound to or from the port of New York, by the way of Sandy Hook, shall take a licensed pilot; or, in case of refusal to take such pilot, shall himself, owners or consignees, pay the said pilotage, as if one had been employed ; and such pilotage shall be paid to the pilot first speaking or offering his services as pilot to such vessel."

The fourth section of the act of Congress approved Aug. 7, 1789 (1 Stat. 54), declares that, —

" All pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively hereafter enact for the purpose, until further legislative provision shall be made by Congress."

This enactment will also be found in sect. 4235 of the Revised Statutes.

The proviso to the second section of an act of Congress of Feb. 2, 1867 (14 Stat. 412), is in these words : —

" Nothing in this act contained, or in the act of which it is amendatory, shall be construed to annul or affect any regulations established by the existing laws of any State requiring vessels entering or leaving a port in such State to take a pilot duly authorized by the laws of such State, or of a State situate upon the waters of the same port."

*Mr. James S. Stearns*, for the plaintiff in error:

The court declined hearing counsel for the defendant in error.

MR. JUSTICE SWAYNE, after stating the case, delivered the opinion of the court.

The only point argued here was the validity of the pilot law of New York with reference to the Constitution of the United States.

At the close of the opening argument of the learned counsel for the plaintiff in error, we announced that the affirmative of the question thus presented was so well settled by the repeated adjudications of this court, that we had no desire to hear the counsel for the defendant in error upon the subject.

Thereafter, the counsel who had been heard submitted a memorandum, in which he called our attention particularly " to the tenth point of the brief of the plaintiff in error, namely, that the tender took place outside of the jurisdiction of the State of New York." He added : " This question has never yet been passed upon by this court in either of the other pilot cases."

Our opinion will be confined to that subject.

There are several answers to the suggestion.

1. The objection does not appear to have been taken in the Circuit Court, and cannot, therefore, be considered here. *Edwards* v. *Elliott*, 21 Wall. 532.

2. A vessel at sea is considered as a part of the territory to which it belongs when at home. It carries with it the local legal rights and legal jurisdiction of such locality. All on board are endowed and subject accordingly. The pilot, upon his boat, had the same authority from the laws of New York to tender and demand employment, and the same legal consequences, under the circumstances, followed the refusal of the master as if both vessels had then been *infra fauces terræ*, where the municipal jurisdiction of the State was complete and exclusive. The jurisdiction of the local sovereign over a vessel, and over those belonging to her, in the home port and abroad on the sea, is, according to the law of nations, the same. Dana's Wheaton, p. 169, sect. 106 ; 1 Kent, Com. 27 ; Vattel, bk. 1, c. 19, sect. 216 ; 2 Rutherford's Inst., bk. 2, c. 9, sects. 8, 19.

The principle here recognized is, of course, subject to the paramount authority of the Constitution and laws of the United States over the foreign and inter-state commerce of the country, and the commercial marine of the country engaged in such commerce, and subject also to the like power of Congress " to define and punish piracies and felonies committed on the high seas and offences against the law of nations." See *Ex parte McNiel*, 13 Wall. 236.

Speaking of the universal law of reason, justice, and conscience, of which the law of nations is necessarily a part, Cicero said : " Nor is it one thing at Rome and another at Athens, one now and another in future, but among all nations it is, and in all time will be, eternally and immutably the same." Lactantius Inst. Div., bk. 7, c. 8.

3. Conceding that the pilot laws of the several States are regulations of commerce, Mr. Justice Story said, " They have been *adopted* by Congress, and without question are controllable by it." 2 Story, Const., sect. 1071.

Mr. Chief Justice Marshall, in *Gibbons* v. *Ogden*, said : " When the government of the Union was brought into exist-

ence, it found a system for the regulation of pilots in force in every State. The act which has been mentioned adopts this system, and gives it the same validity as if its provisions had been specially made by Congress." 9 Wheat. 1, 207. The long-continued silence of Congress, with its plenary power, in the presence of such legislation by the States concerned, is itself an implied ratification and adoption, and is equivalent in its consequences to an express declaration to that effect. *Atkins* v. *The Disintegrating Company*, 18 Wall. 272.

The several acts of Congress bearing on the subject are fully referred to in *Ex parte McNiel, supra*. In that, and in the earlier and more elaborate case of *Cooley* v. *Board of Wardens of Port of Philadelphia* (12 How. 299), this subject, in all its aspects, was so fully considered that further remarks on the present occasion are deemed unnecessary.

*Judgment affirmed.*