## DELNO v. MARKET ST. RY. CO. et al.
### No. 21763–S.

District Court, N. D. California, S. D.

April 15, 1941.

342

J. Joseph Sullivan and Morgan J. Doyle, both of San Francisco, Cal., for plaintiff.

William M. Abbott, Stephen R. Duhring, and Chickering & Gregory, all of San Francisco, Cal., for defendant Market St. Ry. Co.

Samuel S. Stevens and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for defendant Wells Fargo Bank & Union Trust Co.

ST. SURE, District Judge.

Plaintiff, owner of five $1,000 first mortgage bonds of defendant railway company, invokes the Declaratory Judgment Act, 28 U.S.C.A. § 400, after the Railroad Commission of California approved and authorized a refinancing plan extending the maturity, reducing the interest, and changing sinking fund provisions of the railway company bonds.

In his complaint plaintiff alleges, inter alia, that on April 1, 1940, all of the outstanding first mortgage bonds of defendant railway, aggregating approximately $4,618,000, became due and payable; that on or about April 1, 1940, the owners of certain outstanding bonds, agreed in writing with the railway company that the maturity date of the bonds be extended to April 1, 1945, that the annual interest rate be reduced from seven per cent to five, and that certain sinking fund provisions need not be complied with; that plaintiff did not agree to any extension, change, or modification in the five bonds owned by him; that on April 1, 1940, defendant railway executed and delivered to defendant bank, as trustee for the benefit of those bondholders who agreed to the extension of maturity of the bonds, a certain "supplemental indenture," whereby defendant railway made certain promises with respect to the time and manner of payment of the extended bonds; that the bonds owned by plaintiff are secured by a first mortgage lien upon the property of defendant railway, and that the extended bonds are subservient to plaintiff's rights; plaintiff claims and asserts that "it is the duty and obligation of defendant railway company and defendant bank to refrain, absolutely, from making any payment or payments of principal or interest upon or against all or any of said extended bonds, unless and until plaintiff's said bonds have been fully paid and discharged both as to principal and interest"; that on the first days of July and October, 1940, and January, 1941, defendants paid to the holders of extended bonds interest thereon at the rate of five per cent per annum; "that although demand has been made by plaintiff for the payment of principal and interest on the [his] said bonds defendants and each of them have refused and still refuse to pay all or any part of the principal or interest thereon."

Plaintiff "prays and demands" that this Court "declare and adjudge" that his bonds are secured by the first mortgage; that his bonds matured and became due on April 1, 1940, and that there is now due on said bonds the principal sum of $5,000 plus interest from April 1, 1940, at the rate of seven per cent; that the extended bonds are subservient to, and the lien securing them is junior to that of plaintiff's bonds; that it is the duty of defendants to refrain from making any payment of principal or interest upon the extended bonds until plaintiff's bonds have been fully paid; "that the trust duties and obligations of defendant bank, as trustee for plaintiff under said mortgage, has not been terminated or discharged by the making of said 'supplemental indenture'; that defendant bank breached and violated its duties and obligations as trustee under said first mortgage, and that said defendant bank, in becoming trustee under said 'supplemental indenture', has become and is now disqualified from further acting as trustee under said first mortgage"; plaintiff prays for such further relief, "and such restraining orders and injunctions as may be meet and appropriate in the premises."

The defendant railway company is a public utility, operating a street railway system in the City and County of San Francisco and the County of San Mateo, California. Public utilities in this state are subject to the control and regulation of the Railroad

Commission. Section 23, Article XII, of the Constitution of the State of California; Section 31 of the Public Utilities Act, Statutes of California 1915, pp. 115, 132.

In his complaint plaintiff makes no reference whatever to the proceeding relative to defendant railway's refinancing plan had before the Railroad Commission prior to the institution of this suit. It is brought to the attention of the Court as a part of defendants' motion to dismiss, attached to which are copies of the notice of hearing, dated August 30, 1939, and the opinion and order of the Railroad Commission (Decision No. 32467), dated October 17, 1939, approving and authorizing the plan.

The proceeding before the Railroad Commission is entitled as follows: "Before the Railroad Commission of the State of California. In the Matter of the Application of Market Street Railway Company for an order approving a plan for extension of maturity, reduction of interest and change of sinking fund provisions of its First Mortgage 7% Sinking Fund Gold Bonds, Series A, dated April 1, 1924, and approving extensions of maturity, reduction of interest and change of sinking fund set forth in said plan."

The following facts are from the opinion of the Railroad Commission:

"Market Street Railway Company, as of April 1, 1924, executed a trust indenture and issued $13,000,000 of first mortgage 7% bonds due April 1, 1940. (Decision No. 13130 dated February 11, 1924, in Application No. 9726). The trust indenture securing the payment of said bonds provided, among other things, that the company, from January 1, 1925, to and including October 1, 1932, should pay into a sinking fund the sum of $125,000 on the first day of January, April, July and October, being at the rate of $500,000 a year, and on said days of each of the years 1933 to 1939, both inclusive, and on January 1, 1940, the sum of $75,000, being at the rate of $300,000 a year. It was provided, further, that all sinking fund monies must be used to purchase the company's bonds and that all bonds so purchased with monies paid into the sinking fund prior to January 1, 1933 should be kept alive until that date and then canceled, and that bonds purchased with monies paid into the sinking fund on or subsequent to January 1, 1933, should be kept alive until payment or redemption of all the bonds. Monies realized from the sale of mortgaged property were also paid into the sinking fund. Bonds acquired through the use of such moneys were canceled.

"It appears that since the date of issue of the company's bonds it regularly paid interest thereon at the rate of 7 percent per annum and made the quarterly sinking fund payments required by the terms of its trust indenture up to and including April 1, 1938. However, it failed to make the sinking fund payment due July 1, 1938 and it reports that it has since been unable to make any further payments into the sinking fund, although it has continued to meet the interest requirements on its outstanding bonds.

"Of the $13,000,000 of bonds, the company reports that it owns and holds in its treasury $28,000 face value, that through the operation of the sinking fund it has reacquired and retired $5,901,500 face value, that $2,361,500 face value of bonds are now in the sinking fund, leaving total bonds outstanding, as of July 31, 1939, in the amount of $4,709,000. The company reports that it has been unable to pay the interest on the bonds held alive in the sinking fund, that it will be unable to meet its sinking fund requirements during the remaining life of the bonds and that it will be unable to retire the outstanding bonds at maturity.

"Accordingly, in anticipation of the maturity of the bonds on April 1, 1940, the company has prepared for submission to its bondholders, a plan for modification of some of the terms of the bonds.

\*     \*     \*     \*     \*

"The Company regularly has filed financial reports with the Railroad Commission. In addition, the Commission recently, has had occasion to inquire into the company's affairs, (Decision No. 31472, dated November 23, 1938, in Application No. 21115) and it clearly appears that the company's earnings and financial condition have not been sufficient to enable it to meet all its requirements under its trust indenture and to provide for the payment of its remaining bonds on April 1, 1940." .

Then follows a description of the proposed plan, the listing of other than bonded indebtedness of the company, and a general discussion of its financial affairs.

There is no dispute between the parties as to the facts, which are fully disclosed by the complaint and the decision of the Railroad Commission. The case has been presented and argued upon the showing

thus made, which is tantamount to a hearing of the merits upon an agreed statement of facts.

Plaintiff did not attend nor participate in the hearing upon the refinancing plan before the Commission, nor did he consent to the plan. He appears to have ignored both. He calls attention to a portion of a statement (given in full below [1]) made by the Commission in its opinion:

"The order herein will approve the proposed refinancing plan. *Such an order, of course, does not compel any holder of bonds to deposit them under the plan. It is for them to determine whether they can realize more by exercising their legal rights in a public foreclosure proceeding or bankruptcy proceeding than by accepting the plan now offered them.*" [Emphasis supplied.] And under these circumstances plaintiff contends that he is entitled to declaratory relief. He states in his brief, "Plaintiff does not seek any judgment for the money due him; nor does he seek any judgment 'for the recovery of any debt' nor the enforcement of any right; he seeks merely a declaration of the rights and duties of the parties in the premises."

It appears without dispute that plaintiff owns bonds, secured by a first mortgage on defendant railway company's property, and that the principal and interest of the bonds are unpaid. Upon demand defendants refused to pay. It also appears to me from a reading of the complaint that what plaintiff is seeking is to collect the debt which he claims is due to him. In its opinion the Commission points out how that may be done. Bondholders dissatisfied with the proposed plan were told that they might resort to foreclosure proceedings. Section 726 of the Code of Civil Procedure of California provides: "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter."

But plaintiff says that he is not seeking any judgment for the recovery of any debt. Plaintiff says he "seeks merely a declaration of the rights and duties of the parties in the premises." What rights and what duties? Those under the First Mortgage and those under the "Supplemental Indenture"? None other. In the prayer to the complaint plaintiff demands that the Court declare that it is the duty of defendants to refrain from making any payment of principal or interest on the extended bonds until plaintiff's bonds have been fully paid; also that the Court declare that defendant bank breached and violated its duties as trustee of the first mortgage and in becoming trustee under the "Supplemental Indenture" disqualified itself from further acting as trustee under the first mortgage. Both the first mortgage and the "Supplemental Indenture" were under consideration at the hearing on the refinancing plan before the Commission. As we have seen, the plan, extending maturity, reducing interest, etc., was approved and authorized. It ought not be necessary to point out that when the Railroad Commission of California assumed jurisdiction over the defendant railway company for the purpose of administering the law applicable to its activities such jurisdiction was exclusive, except as restricted by the Public Utilities Act, California Statutes 1915, p. 115. Miller v. Railroad Commission, 9 Cal.2d 190, 195, 70 P.2d 164, 112 A.L.R. 221. This Court has no power to review nor interfere with the orders of the Railroad Commission in a matter where its jurisdiction is unassailable.

---

[1] "The order herein will approve the proposed refinancing plan. Such an order, of course, does not compel any holder of bonds to deposit them under the plan. It is for them to determine whether they can realize more by exercising their legal rights in a public foreclosure proceeding or bankruptcy proceeding than by accepting the plan now offered them. In our opinion the plan is fair to the bondholders. It imposes no expense on them. While it does provide for a reduction in the rate of interest paid, it should be remembered that from the time of issue of the bonds, in 1924, to the present, the holders of this company's bonds have enjoyed regular annual interest returns at the rate of 7 per cent per annum, and have seen the company reduce the total amount of bonds outstanding from $13,000,000 to $4,709,000. The same deed of trust that secures the bonds at present will remain intact, except for amendments to provide for changes in date of maturity, rate of interest and sinking fund, and will continue to secure the payment of the outstanding bonds as modified." Then follows the order of the Commission finding that the proposed plan is fair and reasonable, authorizing the defendant railway company to enter into it, and authorizing the execution of the "Supplemental Indenture."

Plaintiff admits that the granting of declaratory relief rests in the Court's discretion, adding that the discretion exercised "must be a sound legal one." With that I agree. Judge Knight, in Automotive Equipment Co. v. Trico Products Corp., D.C., 11 F.Supp. 292, 294, 295, says it is a judicial discretion, and must find its basis in good reason. For a further discussion of the subject see Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613, 617; Western Supplies Co. v. Freeman, 6 Cir., 109 F.2d 693, 696; Maryland Casualty Co. v. Consumers Finance Service, 3 Cir., 101 F.2d 514; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288, 293, 294.

I am of the opinion that no useful purpose would be served by a trial of the controversy in the District Court; that a trial here would not settle the entire controversy, and that for this Court to accept jurisdiction in a controversy involving a matter passed upon by the Railroad Commission, of which it had exclusive jurisdiction, would be improper.

Under the circumstances I feel justified in declining the proffered jurisdiction. The motion to dismiss will therefore be granted.