## HOUSTON PILOTS et al. v. GOODWIN et al.

### No. 11583.

Court of Civil Appeals of Texas. Galveston.
Jan. 6, 1944.

Rehearing Denied March 1, 1944.

CODY, Justice.

This is a plea of privilege case, embracing the appeals of twenty-two defendants from an order of the District Court of Galveston County overruling their several pleas to be sued in Harris County, as the place of their residence. There are also defendants in the case who reside in Galveston County but who, of course, are not parties to the contest over venue, so are not parties to this appeal.

The Galveston-Texas City pilots (hereafter called Galveston pilots) and the Houston pilots maintain at all times the weather permits a pilot boat on the Galveston Bar. On the merits this case is a contest between the Galveston pilots and the Houston pilots involving the right of pilotage of vessels which are brought into Bolivar Roads, and which, after anchoring there, put back to sea without proceeding to any landing place either in the Port of Galveston or the Port of Houston. Bolivar Roads is a roadstead or protected anchorage inside the harbor lines of Galveston Harbor. After January 1, 1942, due to the war, so-called "refuge" ships have been and are being brought into the Roads, which have no intention of proceeding to any landing place inside Galveston Bar, but anchor there for the purpose of being formed into convoys, or for safety.

The appellees, six in number, are the branch pilots of the State for the Port of

Galveston. The appellants, except the "Houston Pilots", an unincorporated association, and R. S. Smith, its secretary, are the branch pilots of the State for the Port of Houston, and are the members and all the members of appellant "Houston Pilots".

By their action appellees seek to recover from appellants, and from defendants alleged to be their agents and employees residing in Galveston County, as damages the sum of $5000 by reason of appellants having collected inward and outward pilotage, totalling such amount, since January 1, 1942, on 80 vessels brought into the Roads by appellants, and which put back to sea without proceeding to a landing place. The action is also one to recover the forfeiture of $50, prescribed by Art. 8277, Vernon's Ann.Civ.St. on each of said 80 vessels, in addition to the alleged damages of $5000; appellees alleging that they were at all times ready, able and willing to pilot said ships, which they claim were wrongfully piloted by appellant-pilots. The action is also brought against the pilot commissioners of the Port of Galveston, which defendants are not parties to this appeal, to compel them by mandatory injunction to prevent the Houston pilots from acting as pilots on ships whose destination is Bolivar Roads, and which do not thereafter proceed to a point within the Harris County Houston Ship Channel Navigation District (whose port is Houston).

Subject to their pleas of privilege, appellants answered, urging numerous special exceptions, and traversed the allegations of appellees' petition with a general denial, and specially denied in detail such allegations.

In their controverting affidavits to the pleas of privilege, appellees asserted that this action is maintainable in Galveston County against appellants by virtue of Subdivisions 23, 4, 9, 5 and 29a, of Art. 1995, Vernon's Ann.Rev.Civ.St., and by reason of the facts alleged in the controverting affidavits. The facts alleged in the controverting affidavits were substantially those alleged in appellees' petition. The allegations of said controverting affidavits, alleged as pertinent to each such subdivision, were by appellees marshalled by reference under such subdivision. It was alleged that the action was maintainable in Galveston County:

(a) By virtue of Subd. 23, for the reason that the defendant "Houston Pilots" is an unincorporated association or joint stock company, and the cause of action arose in Galveston County. The facts which it was contended constituted the "Houston Pilots" were set forth; and it was alleged that a part of the cause of action as alleged in appellees' first amended original petition arose in Galveston County.

(b) By virtue of Subd. 23, for the reason that defendant "Houston Pilots" is an unincorporated association or joint stock company having an agency and representative in Galveston County. The facts relative to the office maintained by appellants in Galveston County were alleged, as well as the fact that Richard Dean is employed by appellants, that he resides in Galveston County, is in charge of said office, and the services he performs were described.

(c) By virtue of Art. 1995, Subd. 4, for the reason that there are more than two defendants residing in different counties, some of which defendants, namely, Dean, Ryberg, Barfield and George, reside in Galveston County. It was alleged that said defendants are agents and employees of the appellant pilots. It was alleged that Dean was in charge of the Galveston office of appellants, and the nature of the work done by the other three defendant employees of appellants who reside in Galveston County was described, and it was alleged that such labors were essential to the successful operation of the appellants in the alleged unlawful handling of vessels for which damages are sought to be recovered.

(d) By virtue of Subd. 4, for the reason there are more than two defendants residing in different counties, some of whom, namely, Langben, Gangler, Rhodes, Cohen and Purdy, reside in Galveston County. Said defendants are those sued as the pilot commissioners of the Port of Galveston-Texas City, and they are alleged to reside in Galveston County.

(e) By virtue of Subd. 9, for the reason that this suit is based upon a trespass and offense committed in Galveston County. In this connection it is alleged that the acts done by the appellants and their alleged agents and employees were willfully done by them, and same constituted an intentional invasion of the legal rights of appellees and " * * * the unauthorized acts of said defendants in piloting vessels to and from and into and out of that portion of the Port of Galveston known

as Bolivar Roads as described in said amended petition and in this controversy in the manner and under the conditions stated in the pleadings covering ships as to which these plaintiffs were entitled to perform the pilotage and collect the pilot fees, constituted a trespass and offense committed in Galveston County."

(f) By virtue of Subd. 5, for the reason that the appellants have contracted and agreed as evidenced by memorandum in writing to perform an obligation in Galveston County, expressly naming a definite place therein.

(g) By virtue of Subd. 29a, for the reason that there are more than two defendants in the suit and such suit is lawfully maintainable therein under the provisions of Art. 1995 as to some, any and/or all of the defendants, same being necessary parties thereto.

To said controverting affidavits appellants urged numerous special exceptions, and denied the allegations thereof generally, and specially denied certain of them.

The issues on the pleas and controverting affidavits were heard by the court without a jury, and, as above indicated, overruled. Appellants seasonably requested conclusions of fact and law, but before they could be prepared and filed, the beloved Judge J. C. Canty, before whom such controversy was heard, died. The parties have not cited authorities relative to the conclusions of fact and law which were actually filed, and in the absence of such aid we have not felt constrained to make an investigation. We have concluded to treat this case as though no request for conclusions of fact and law was made, or that it was withdrawn.

Appellants present the points upon which they seek a reversal through some twelve pages of their brief. We, therefore, cannot set them forth. They are based, however, upon appellants' position; that the "Houston Pilots" is not an unincorporated association, and not a suable entity; that appellant pilots have the exclusive right to the pilotage of ships inward and outward bound from Bolivar Roads; that a branch pilot is a state officer; and that the Court was without jurisdiction in hearing the venue contest to do other than order the pleas sustained; and that appellees failed to plead and prove the venue facts necessary to sustain venue in Galveston County against appellants.

### Opinion.

■ The several states are without power to regulate the pilotage of vessels engaged in coastwise or domestic commerce, generally referred to as "enrolled" vessels. But until the Congress acts to regulate the pilotage of "registered" vessels, those engaged in foreign commerce, the power remains with the states to do so. 48 C.J. 1184; Anderson v. Pacific Coast Steamship Company, 225 U.S. 187, 32 S. Ct. 626, 56 L.Ed. 1047. It appears that the word branch is used in England to signify the certificate held by a brother of the Trinity House,[1] an association of mariners first chartered by Henry VIII.[2] It is likewise the term applied to certificate given by the Trinity House to pilots who have passed an examination as to their competence.[1] In England a branch pilot is the holder of such certificate.

■ Doubtless everywhere pilots are licensed to practice pilotage only in particular waters, and only after they have passed an examination as to their competence therein. In Texas the license issued to pilot is issued to him as "branch pilot" of a particular port. And such license is referred to in the statutes as though it were a commission which invests such branch pilot with an office. Art. 8270, et seq., relating to pilots of seaports; Art. 8248, et seq., relating to pilots of ports of navigation districts. The language of such statutes is misleading, for the "commission", which licenses a pilot to practice pilotage as the branch pilot of a particular port, is merely a certificate of competence, and does not differ in character from certificates of competence required of lawyers or doctors before they are permitted to practice law or medicine. All the pilots involved in this case hold federal licenses under authority of which they practice the pilotage regulated by federal law, and because such federal authorization is expressly called a license there seems to be no misconception that the holder thereof is a federal officer, rather than a mere licensee. As was said in Moody v. Megee, 5 Cir., 41 F.2d 515: "All states have the right to license pilots for waters in their territorial jurisdiction * * *. It is not usual to require a bond of a pilot as

---

[1] Oxford English Dictionary.  [2] Ency. Brit.

the prerequisite to the issuance of a license, but in this case it is difficult to conjecture what official duties are intended to be covered by the bond. None are imposed by the laws of Texas. A pilot's license is a certificate of competence * * *. In piloting a vessel he is not discharging any official duty. He is acting merely in a private capacity as a servant of her owner."

■ Coming to the consideration of the pleading and proof of specific venue facts in this case, we conclude in support of the court's judgment that the "Houston Pilots" is an unincorporated association. The evidence abundantly supports such conclusion. Indeed, the Supreme Court, speaking through Justice Sharp, expressly found that: "In 1921 a group of Houston pilots entered into a written agreement, whereby they organized the Houston Pilots, an unincorporated association, for the purpose of 'more efficiently handling vessels on the Houston Ship Channel' * * *. Each pilot, upon becoming a member, was required to pay into the association the sum of $3,000, and the association issued to each a certificate of membership." Citizens State Bank of Houston v. O'Leary, 140 Tex. 345, 348, 167 S.W.2d 719, 720. Indeed, in the case of Mobile Bar Pilots Ass'n v. Com'r of Internal Revenue, 5 Cir., 97 F.2d 695, 697, cited by appellants, it is said: "It is not necessary for a man to be a member of an association to practice his profession but in the nature of things it would be impossible for him to operate alone. He must meet vessels beyond the bar in all kinds of weather and maintain boats of sufficient size and seaworthiness to permit him to do so. This would be impossible without an organization as the cost would be prohibitive to a single individual." The evidence in this case showed that appellants owned and maintained pilot boats, that they rented an office in Houston and one in Galveston. That they have officers; that their gross earnings, which consist of pilot fees, are collected by their office force and deposited in the bank; that out of said earnings they maintain a replacement fund to repair and replace equipment, and pay their employees, and then divide their net earning among their members. Such evidence may not be, and doubtless is not, sufficient to make the association liable for the negligence of a member in piloting a ship, for the association has no power to control its members in act of piloting; and it may not be sufficient to make the association liable as for income tax. But such facts are sufficient to show that it may sue or be sued in its company or distinguishing name, without the necessity of making the members parties to the suit. Art. 6133, et seq. Whether, in any particular suit, the association can be held liable therein is a question to be determined in such suit.

In the instant case the association and its members are sued both in contract and in tort to recover damages based upon the acts of the members practicing pilotage on vessels brought into Bolivar Roads, which did not thereafter proceed to a point within Harris County Houston Ship Channel Navigation District, and collecting fees therefor, and which fees were handled by said association as all collections were handled by it, with the net balance divided among the members. The evidence showed that for many years prior to 1942, the Houston pilots and the Galveston pilots worked under an arrangement which they found satisfactory, and by which they preserved harmony. As pointed out above, both sets of pilots maintain pilot boats outside the Galveston Bar. When a ship was solicited or "spoken" outside the Bar, if she was under orders making Houston or Baytown her destination, she was boarded by a Houston pilot and brought in. If Galveston or Texas City was her destination, then a Galveston pilot brought her in. This conformed to law, for only a branch pilot for the Port of Galveston-Texas City is authorized or licensed to bring in a ship destined for Galveston or Texas City; and vice versa with reference to a vessel bound for Houston. But it would sometimes happen that a vessel when spoken had orders to go to Bolivar Roads and wait there for orders. Under the arrangement spoken of above, if a ship when spoken was found to be bound for Bolivar Roads, the pilots would indiscriminately bring her in. And if she thereafter proceeded to Houston, and had been brought in by a Galveston pilot, the Galveston pilots released the pilotage on her to the Houston pilots. If however, she thereafter proceeded to Galveston, or was diverted so that she put back to sea, and had been brought in by a Houston pilot, the pilotage on her was released to the Galveston pilots by the Houston pilots.

■ There was nothing unlawful in such an arrangement. If a ship was bound

for Houston, her pilotage fell under the jurisdiction of the pilot commissioners for Harris County Houston Ship Channel Navigation District. But if it was not so bound, the pilotage of her did not fall within such jurisdiction, as will hereafter appear. The arrangement between the two sets of pilots therefore merely provided for a retroactive correction to conform to the destination of the ship when it became known. The pilots of either port were licensed to perform the mere act of pilotage into the Roads, dependent upon the ship's destination. But by Art. 8249, it is provided (with reference to inland ports): "Such navigation districts shall have exclusive jurisdiction as hereinafter defined over the pilotage of boats between the Gulf of Mexico and their respective ports, as well as intermediate stops or landing places for such boats upon navigable streams wholly or partly within such navigation districts." It is essential to the functioning of a navigation district that it have jurisdiction over the pilotage of boats moving in commerce between its port and the open sea. O'Brien v. Amerman, 112 Tex. 254, 247 S.W. 270. Therefore, full and exclusive jurisdiction thereover was vested in such district. The legislative purpose to this effect is clear. It is equally clear that the legislature meant to limit the exclusive jurisdiction thus conferred to such as was thereby granted. The Legislature knew that boats moving between inland ports and the open sea must move through waters over which the pilot commissioners of seaports had the general or residuary jurisdiction. And it was necessary to provide against any conflict of jurisdiction.

■ Now the harbor lines of Galveston Harbor begin in the Gulf a mile south of and beyond the sea end of the jetties. Olsen v. Smith, Tex.Civ.App., 68 S.W. 320, error denied; Id., 195 U.S. 332, 25 S.Ct. 52, 49 L.Ed. 224. They extend north to the south line of Harris County Houston Ship Channel Navigation District, which crosses the Houston Ship Channel between Cedar Bayou and Morgan's Point. Included within the lines of Galveston Harbor are the Galveston docks, the Texas City docks and Bolivar Roads. Bolivar Roads is as much within the residuary jurisdiction over pilotage which is vested the pilot commissioners of the Port of Galveston-Texas City as are the docks at Galveston and at Texas City. There is no

language in the statute that excludes the jurisdiction of said pilot commissioners over the pilotage of boats which are piloted into the Roads which merely anchor there and return to sea, or proceed to Galveston. It would be unjust to exclude said commissioners from exercising jurisdiction over the pilotage of boats from the Roads to docks within Galveston Harbor, and of no benefit to commerce moving between Houston and the open sea, and such pilotage, within the language of Art. 8249, stands upon the same footing as boats bound for the Roads and back to sea, therefore no such intention will be attributed to the Legislature. State v. Mauritz-Wells Co., Tex.Sup., 175 S.W.2d 238, and cases there cited. A boat moving from the Gulf of Mexico into the Roads and back out to sea, is not a boat which is piloted between the Gulf and Houston, nor one which is piloted between the Gulf and "intermediate stops or landing places for such boats upon navigable streams wholly or partly within such navigation district." Bolivar Roads is not a stop or landing place upon a stream wholly or partly within Harris County Houston Ship Channel Navigation District. It is upon no stream at all.

There was direct evidence to the effect that in May or June of 1942, at a meeting of the Houston Pilots", it was resolved that the Houston pilots should pilot inward and outward all ships bound for the Roads, and back to sea, and collect the pilotage thereon, though the minutes of the meeting were not produced in court. But if such evidence is not admissible, then, from evidence which was produced in court, the court was fully warranted in concluding that in June, 1942, the Houston pilots, pursuant to a common design, began to pilot ships bound merely for Bolivar Roads, such as "refuge" ships. Indeed, the proof was conclusive, and in their answer appellants claimed the exclusive right to such pilotage, and asserted that they intend when the war is over "to insist that these plaintiffs refrain from acting as pilots on vessels between the Gulf of Mexico and Bolivar Roads over which these defendants have exclusive jurisdiction."

■■ From what has been said, it follows that appellants were by law charged with knowledge that appellees had the exclusive right or license to pilotage of ships which were brought into Galveston Harbor solely for the purpose of the anchor-

age therein, and return to open sea. The evidence fully established that the Houston pilots intentionally and willfully boarded such ships and piloted them in, though the rights to such pilotage belonged to the Galveston pilots. Therefore the Houston pilots intentionally trespassed upon appellees' said right of pilotage, so as to render themselves liable in an action of trespass upon the case. As said in Crespi v. Wigley, Tex.Civ.App., 18 S.W.2d 716, 717, "The rule which seems to have been adopted by our courts * * * is that a trespass within * * * the venue statute embraces not only actions of trespass proper, as known to the common law, but also actions of trespass on the case where an injury has been willfully, intentionally, or negligently by one party to the * * * property of another." See also Hill v. Kimball, 76 Tex. 210, 216, 217, 13 S.W. 59, 7 L.R.A. 618. In Panther Oil & Grease Mfg. Co. v. Schumaker, Tex.Civ.App., 166 S.W.2d 205, 207, it is said: "The term trespass, as that term is used in Subdivision 9 under said Article 1995, is held to embrace actions for such injuries as result from affirmative acts or from wrongful acts willfully or negligently committed. Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062, and cases there cited."

The wrongful appropriation of such pilotage increased the pilotage fees collected by the "Houston Pilots"; and the inference is that such pilotage fees, after being collected, were mingled with the collection of other such fees, deposited in the bank, and applied first to the expenses of the "Houston Pilots", and then distributed equally among the holders of certificates of stock therein. Thus the inference is warranted that the trespass complained of was committed by each pilot not only on behalf of himself, but for the joint account of each member of the association, and so accepted and ratified. In support of the court's judgment we make such inference.

In their pleadings, appellants, inclusive of the "Houston Pilots," assert in effect that, except for the action of the Navy and the Coast Guard in interposing they would continue to pilot ships bound solely to and from Bolivar Roads (which we hold to constitute a trespass upon appellees' rights of pilotage). They further state in effect that they will resume piloting such ships after the war. The evidence was ample to sustain a conclusion by the court that

appellees began to pilot such ships in 1942, and continued doing so until the Navy and the Coast Guard intervened, ordering appellees and appellants to pilot such ships on an alternate basis. In support of the court's judgment, we will presume that he found that appellants jointly and severally engaged in trespassing upon appellees' rights of pilotage.

■ We cannot sustain appellants' contention that the "Houston Pilots" possesses no liability as an association for the tortuous invasion of appellees' right of pilotage. That a pilot association is an association, at least inter sese, no authority, we believe, denies. The members of such association could not engage in the trespass upon appellees' rights without the making use of the service which such association was organized to perform. When such service is intentionally devoted by the association to promoting the piloting of ships by its members the pilotage of which belongs to appellees, as a part of its normal business; when it collects the pilotage fees therefor, and mingles such fees with its funds in the bank, and applies such funds to the payment of office rent, and, all other expenses, including repairs and replacement of pilot equipment, and distributes the net earnings among its members; then such business is inter sese business. And the association is a principal.

■ We overrule appellants' contention that the pleadings and the evidence were insufficient to sustain venue facts necessary to be pled and proved in order to maintain the action against the "Houston Pilots" in Galveston County, under Subdivision 23 of Art. 1995. So also of the contention that the action cannot be maintained against the appellant pilots under Subdivision 9 of Art. 1995. We think no useful purpose would be served in discussing the pleadings and proof of venue facts under the other exceptions to Art. 1995, relied upon by appellees to maintain the action in Galveston County.

■ It is appellants' further contention that it was necessary, in order to give the court jurisdiction to enter any order other than the transfer of the suit to Harris County, that the defendants who reside in Galveston be served with a copy of the controverting plea, as provided in Art. 2008; citing Tunstill v. Scott, 138 Tex. 425, 160 S.W.2d 65. The requirements of Rule 87, Texas Rules of Civil Procedure, have su-

perseded the requirements of Art. 2008. But we need not inquire into the requirements of Rule 87, and whether or not they were followed so as to make the order overruling appellants' pleas binding upon the defendants who reside in Galveston County. In Tunstill v. Scott, 160 S.W.2d at page 70, it is expressly recognized that the court has jurisdiction to try the question of venue between the plaintiff and the defendant who has filed his plea of privilege, where he was served with notice and participated in the trial. The Galveston defendants asserted no privilege to be sued elsewhere than in Galveston County. The court had jurisdiction to try the issues made by the pleas of privilege filed by appellants and the controverting affidavits of appellees.

No reversible error was committed by the trial court, and the judgment is affirmed.

Affirmed.