**McLAIN et al. v. LANCE et al.**

No. 11118.

Circuit Court of Appeals, Fifth Circuit.

Dec. 20, 1944.

Rehearing Denied Jan. 15, 1945.

---

[1] See also In re Sieben, 7 Cir., 89 F.2d 935.

Douglas W. McGregor and Charles Murphy, both of Houston, Tex., for appellants.

Russel H. Markwell and Charles J. Stubbs, both of Galveston, Tex., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

A group of Texas residents, known as the "Houston Pilots," filed a libel in personam, seeking a declaratory judgment against another group of residents known as the "Galveston Pilots." Libelees moved to dismiss on the grounds: (a) That courts of admiralty are not authorized to render declaratory judgments; (b) that the controversy here is not maritime and hence a court of admiralty has no jurisdiction to determine same; (c) that libelants and respondents are all duly commissioned officers of the United States Coast Guard and the proceeding is one to delineate, restrict, and control the authority of the Coast Guard over its commissioned officers, and that such is beyond the authority of a court of admiralty; (d) that a proceeding between the same parties, over the same subject matter, and for the adjudication of the same controversy was filed in, and the law of the case settled by, the state courts of Texas prior to the institution of the libel in the present case in which the decision was adverse to the contentions of the libelants. See Houston Pilots v. Goodwin et al., Tex.Civ.App., 178 S.W.2d 308, writ of error denied and libelants' (appellants') motion for leave to file a petition for mandamus denied by Supreme Court of Texas, all prior to the bringing of the present suit.

Sometime after the present war began the Galveston and Houston Pilots were taken into the Coast Guard and commissioned as officers; however, they were not placed on a salary but continued to be remunerated entirely from pilotage fees as provided by state law. The authority of the pilots for the Galveston Harbor and of port pilots generally is found in Articles 8270 et seq., and the authority of the Houston Pilots or of pilots in navigation districts such as the Harris County Houston Ship Channel Navigation District is found in Articles 8248 et seq.,[1] of the Revised Civil Statutes of Texas, insofar as such statutes affect registered vessels.

As a precaution against the menace of submarines, merchant vessels not destined for Houston or Galveston were required by the Navy to anchor in waters of Galveston Bay and particularly at or near a portion thereof known as "Bolivar Roads," while awaiting a safe and appropriate time to proceed, either alone or in convoy. Thus many vessels did not enter either the Port of Houston or the Port of Galveston for the purposes of trade and commerce, but only took refuge in the waters of Galveston Bay. The Houston Pilots, both here and in the state suit, have insisted that they have the right to pilot these "refuge vessels" into and out of Bolivar Roads. The Galveston Pilots, both here and in the state suit, have insisted that under Texas statutes Bolivar Roads is within the pilotage area of the Galveston Pilots, within which they and they alone are entitled to pilot vessels coming into or out of Galveston Harbor for Bolivar Roads and to collect the fees therefor, and that the Houston Pilots are entitled to pilotage fees only for vessels entering the waters within the Harris County-Houston Ship Channel Navigation District.

The controversy is one solely between groups of rival pilots and is wholly be-

---

[1] Article 8249, with reference to pilotage in inland ports, provides:

"Such navigation district shall have exclusive jurisdiction as hereinafter defined over the pilotage of boats between the Gulf of Mexico and their respective ports, as well as of intermediate stops or landing places for such boats upon navigable streams wholly or partly within such navigation districts."

tween citizens of Texas and ultimately involves a construction of Texas statutes prescribing the authority of pilots as instrumentalities of the state government in respect to pilotage in waters in and around Galveston Bay and the Houston Ship Channel. It is not cognizable in federal court under any jurisdictional ground set out in Secs. 41 or 371, of 28 U.S.C.A., unless a case of admiralty jurisdiction is shown under the admiralty clauses of subsections (3) of Sections 41 or 371. If the controversy between these rival pilots is not one which can be maintained in admiralty, then the "actual controversy" required[2] in a proceeding for a declaratory judgment would be absent, even if it be conceded, or ascertained, that a court of admiralty has power to render declaratory judgments.

That this controversy between rival pilots, which involves no vessel, no cargo, no contract, no tort, no owner, claimant, master, or seaman, and calls for no declaration of the law of the sea but for a construction of statutes of Texas relating to the jurisdiction of Gulf, and Navigation district, pilots, is cognizable in admiralty is gravely doubted. Definitely it is not one over which admiralty would have exclusive jurisdiction. Leon v. Galceran, 11 Wall. 185, 78 U.S. 185, 20 L.Ed. 74, 1 Am.Jr. 556, Sec. 18.

Likewise there is much uncertainty as to whether or not a court of admiralty is authorized to render a declaratory judgment.[3]

The lower Court was of the opinion that since Sec. 81(a) (1) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c provides that the Rules do not apply to proceedings in admiralty while Sec. 57 of the Rules provides that the procedure for obtaining a declaratory judgment shall be in accordance with those Rules, the inference is inescapable that the Supreme Court, in the approval of the Rules, had thus expressed the thought that courts of admiralty were not empowered to render declaratory judgments. It was on this reasoning that the lower Court dismissed the libel.

■ It is not necessary, however, that we decide either of those questions, for even though the controversy were one cognizable in admiralty, and even though courts of admiralty were authorized to render declaratory judgments in such a controversy, the exercise of that power rested in the sound discretion of the lower Court[4] and it could have and doubtless should have, refused to render a declaratory judgment in a case where the state courts of Texas, having concurrent—and mayhap exclusive—jurisdiction of the same subject matter and of the same parties, had theretofore declared the rights of the parties to pilotage over the waters involved.

■ Moreover, the rights of the contending parties stem from local statutes of the State of Texas, rather than from maritime contracts of vessels to pay for pilotage services, or because, forsooth, the Navy or Coast Guard might, or might not, in the future make some order or regulation that would affect the parties. Courts do not concern themselves to decide abstract questions.[5]

---

[2] The Declaratory Judgment Statute, Sec. 400, 28 U.S.C.A., provides that "The application shall be by petition *to a court having jurisdiction to grant the relief.*" (Italics supplied.)

[3] In Streckfus Steamers, Inc., v. Vicksburg, 5 Cir., 81 F.2d 298, 299, Judge Sibley questioned the power of a court of admiralty to render a declaratory judgment. Said he:

"That act is expressed to be an amendment of the Judicial Code by adding the new legislation (section 274d, 28 U.S.C.A. § 400, and note) after section 274c (28 U.S.C.A. § 399). The mentioned section and those preceding it have no reference to courts of admiralty, but only to suits at law and in equity, and it is at least doubtful whether courts of admiralty are within the new act."

[4] Brillhart, Adm'r, v. Excess Insurance Co. of America, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620; Western Electric Co. v. Hammond, 1 Cir., 135 F.2d 283; Associated Indemnity Corporation v. Garrow Co., 2 Cir., 125 F.2d 462; Maryland Casualty Co. v. Consumers' Finance Service, 3 Cir., 101 F.2d 514; Maryland Casualty Co. v. Boyle Construction Co., 4 Cir., 123 F.2d 558; Maryland Casualty Co. v. Falkner, 6 Cir., 126 F.2d 175; American Automobile Insurance Co. v. Freundt, 7 Cir., 103 F. 2d 613; Delno v. Market St. Ry. Co., D.C., 38 F.Supp. 341; Id., 9 Cir., 124 F. 2d 965; Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, text 251.

In Olsen v. Smith, 195 U.S. 332, 25 S.Ct. 52, 53, 49 L.Ed. 224, the Court, in applying an Act of the Legislature of the State of Texas relative to pilotage in Galveston Harbor, said:

"The first contention in effect is that the state was without power to legislate concerning pilotage, because any enactment on that subject is necessarily a regulation of commerce within the provision of the Constitution of the United States. The unsoundness of this contention is demonstrated by the previous decisions of this court, since it has long since been settled that even although state laws concerning pilotage are regulations of commerce 'they fall within that class of powers which may be exercised by the states until Congress has seen fit to act upon the subject.' Cooley v. Board of Wardens, 12 How. 299, 13 L.Ed. 996; Ex parte McNiel, 13 Wall. 236, 20 L.Ed. 624; Wilson v. McNamee, 102 U.S. 572, 26 L.Ed. 234."

Sec. 211, 46 U.S.C.A., provides:

"Until further provision is made by Congress, all pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively enact for the purpose."

It will be observed that Congress has made no provision in Sec. 191 of 50 U.S.C.A., for the Navy or Coast Guard to take away from the states the right to regulate the fees of pilots in ports of the United States, nor did the Navy or Coast Guard undertake to do so in this instance. Furthermore, there is no allegation that the Secretary of the Treasury ever promulgated the regulation required to put that section into operation.

■ Any contention that the exclusive jurisdiction to settle the controversy here is, by the Constitution and laws, vested in a court of admiralty is untenable. Leon v. Galceran, supra. Subdivisions (3) of Secs. 41 and 371 of 28 U.S.C.A., each reserve to suitors any common law remedy which the common law was competent to give. A suit by one pilot against another pilot for money had and received, or for money wrongfully collected and converted, would be a common law remedy even though the right were fixed by state statute.

■ Since the federal courts would be bound by the construction of state statutes by state courts, they are encouraged to remit the construction of state statutes to state courts whenever there is a discretion in the federal court so to do, and the immediacy of an authoritative state court decision is obvious. In City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S. Ct. 986, 987, 86 L.Ed. 1355, the complainant prayed for a declaratory judgment as to the meaning and effect of certain local laws. The Court said:

"We granted the petition for certiorari * * * because of the doubtful propriety of the District Court and of the Circuit Court of Appeals in undertaking to decide such an important question of Illinois law instead of remitting the parties to the state courts for litigation of the state questions involved in the case. Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S. Ct. 643, 85 L.Ed. 971.

"We are of the opinion that the procedure which we followed in the Pullman case should be followed here. Illinois has the final say as to the meaning of the ordinance in question. It also has the final word on the alleged conflict between the ordinance and the state Act. The determination which the District Court, the Circuit Court of Appeals or we might make could not be anything more than a forecast—a prediction as to the ultimate decision of the Supreme Court of Illinois. Here as in the Pullman case 'a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication.' 312 U.S. at page 500, 61 S.Ct. at page 645, 85 L.Ed. 971."

\* \* \* \* \*

"The desirability of the course which we have suggested is not embarrassed by any question as to whether ready recourse may be had to the state courts. The availability of the state tribunal is obvious, *since a case involving substantially identical issues and brought by respondent's parent*

*corporation is pending in the state court."*
(Italics supplied.)

And in Meredith v. Winter Haven, 320 U.S. 228, text 236, 64 S.Ct. 7, 12, this language was used:

"It is the court's duty to do so when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action. City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355."

In these cases the mere pendency of an action in the state court was considered as sufficient grounds for justifying the federal court, in the exercise of its discretion, to remit the parties to the state court for a declaration, or determination, of rights under state statutes. In the present case not only is a case pending, but it is one in which the state courts, by an opinion in 178 S.W.2d 308, 312, had already declared what the pilotage rights of the parties were.[6]

■ Where a State Court, having jurisdiction in a suit between the same parties over the same subject matter, has defined and declared the rights of the parties, the federal District Court, acting as a court of

---

[6] "The evidence showed that for many years prior to 1942, the Houston pilots and the Galveston pilots worked under an arrangement which they found satisfactory, and by which they preserved harmony. As pointed out above, both sets of pilots maintain pilot boats outside the Galveston Bar. When a ship was solicited or 'spoken' outside the Bar, if she was under orders making Houston or Baytown her destination, she was boarded by a Houston pilot and brought in. If Galveston or Texas City was her destination, then a Galveston pilot brought her in. This conformed to law, for only a branch pilot for the Port of Galveston-Texas City is authorized or licensed to bring in a ship destined for Galveston or Texas City; and vice versa with reference to a vessel bound for Houston. But it would sometimes happen that a vessel when spoken had orders to go to Bolivar Roads and wait there for orders. Under the arrangement spoken of above, if a ship when spoken was found to be bound for Bolivar Roads, the pilots would indiscriminately bring her in. And if she thereafter proceeded to Houston, and had been brought in by a Galveston pilot, the Galveston pilots released the pilotage on her to the Houston pilots. If, however, she thereafter proceeded to Galveston, or was diverted so that she put back to sea, and had been brought in by a Houston pilot, the pilotage on her was released to the Galveston pilots by the Houston pilots.

"There was nothing unlawful in such an arrangement. If a ship was bound for Houston, her pilotage fell under the jurisdiction of the pilot commissioners for Harris County Houston Ship Channel Navigation District. But if it was not so bound, the pilotage of her did not fall within such jurisdiction, as will hereafter appear. The arrangement between the two sets of pilots therefore merely provided for a retroactive correction to conform to the destination of the ship when it became known. The pilots of either port were licensed to perform the mere act of pilotage into the Roads, dependent upon the ship's destination. But by Art. 8249, it is provided (with reference to inland ports): 'Such navigation districts shall have exclusive jurisdiction as hereinafter defined over the pilotage of boats between the Gulf of Mexico and their respective ports, as well as intermediate stops or landing places for such boats upon navigable streams wholly or partly within such navigation districts.' * * * Therefore, full and exclusive jurisdiction thereover was vested in such district. The legislative purpose to this effect is clear. It is equally clear that the legislature meant to limit the exclusive jurisdiction thus conferred to such as was thereby granted. The Legislature knew that boats moving between inland ports and the open sea must move through waters over which the pilot commissioners of seaports had the general or residuary jurisdiction. And it was necessary to provide against any conflict of jurisdiction.

"Now the harbor lines of Galveston Harbor begin in the Gulf a mile south of and beyond the sea end of the jetties. Olsen v. Smith, Tex.Civ.App., 68 S.W. 320 (error denied), 195 U.S. 332, 25 S. Ct. 52, 49 L.Ed. 224. They extend north to the south line of Harris County Houston Ship Channel Navigation District, which crosses the Houston Ship Channel between Cedar Bayou and Morgan's Point. Included within the lines of Galveston Harbor are the Galveston docks, the Texas City Docks and Bolivar Roads. Bolivar Roads is as much within the residuary jurisdiction over pilotage which is vested the pilot commissioners of the Port of Galveston-Texas City as are the docks at Galveston and at Texas City.

146 F.2d—22½

admiralty or otherwise, is without power to redeclare, review, or set aside such judgment or decree of the state court, whether it be interlocutory or final, because it is not a court of review for either state or federal cases.

█ Moreover, the purpose of the Declaratory Judgment Statute is to adjudicate rights of parties who have not otherwise been given an opportunity to have those rights determined, for in Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000, this significant statement is found:

"Defendants have not instituted any action wherein the plaintiff would have an opportunity to prove the absence of the alleged disability * * *."

In United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288, text 294, the Third Circuit said:

"An obvious and principal reason for the exercise of such discretion is found in the existence of a suit whose determination in another court will ultimately decide the liability of the party petitioning for a declaration. If the petition for a declaration is filed after the commencement of such suit, it should be dismissed, 16 American Jurisprudence sec. 14."

In Aetna Casualty & Insurance Co. v. Quarles, 4 Cir., 92 F.2d 321, 324, Judge Parker, in speaking of the discretion of the Court in matters relating to declaratory judgments, said:

"* * * but it should not be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases, or for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction. The object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the state. See Associated Indemnity Co. v. Manning, D.C., 16 F.Supp. 430."

It appears here that what the libelants need is not so much a declaration of their rights as a different declaration thereof.

█ Even though a court of admiralty had jurisdiction of the subject matter, its jurisdiction is not exclusive in a personam action such as this,[7] and even though it were authorized to render a declaratory judgment, which we leave undecided, such a court would not exercise such power to overturn a prior judgment of a state court of concurrent and competent jurisdiction between the same parties and involving the same questions. No litigant is entitled to two declarations of the same right.

---

There is no language in the statute that excludes the jurisdiction of said pilot commissioners over the pilotage of boats which are piloted into the Roads which merely anchor there and return to sea, or proceed to Galveston. It would be unjust to exclude said commissioners from exercising jurisdiction over the pilotage of boats from the Roads to docks within Galveston Harbor, and of no benefit to commerce moving between Houston and the open sea, and such pilotage, within the language of Art. 8249, stands upon the same footing as boats bound for the Roads and back to sea; therefore no such intention will be attributed to the Legislature. State v. Mauritz-Wells Co. [141 Tex. 634], 175 S.W.2d 238, and cases there cited. A boat moving from the Gulf of Mexico into the Roads, and back out to sea, is not a boat which is piloted between the Gulf and Houston, nor one which is piloted between the Gulf and 'Intermediate stops or land places for such boats upon streams wholly or partly within such navigation district.' Bolivar Roads is not a stop or landing place upon a stream wholly or partly within Harris County Houston Ship Channel Navigation District. It is upon no stream at all.

\*　　\*　　\*　　\*　　\*

"From what has been said, it follows that appellants were by law charged with knowledge that appellees had the exclusive right or license to pilotage of ships which were brought into Galveston Harbor solely for the purpose of the anchorage therein, and return to open sea. The evidence fully established that the Houston pilots intentionally and willfully boarded such ships and piloted them in, though the rights to such pilotage belonged to the Galveston pilots. Therefore the Houston pilots intentionally trespassed upon appellees' said right of pilotage, so as to render themselves liable in an action of trespass upon the case.

\*　　\*　　\*　　\*　　\*

"We overrule appellants' contention that the pleadings and the evidence were insufficient to sustain venue facts necessary to be pled and proved in order to maintain the action against the 'Houston Pilots' in Galveston County, under Subdivision 23 of Art. 1995."

[7] Leon v. Galceran, supra.

■ It is true that the case in the state court is still pending at least on the question of what amount, if any, the Galveston Pilots are entitled to recover from the Houston Pilots, and the judgment is not res judicata of the entire case, but the law of the case has been declared. This declaration of rights, although not in the form of a final judgment in the sense of the conclusion of the case, nevertheless it was rendered out of necessity for the court to finally determine the question of venue or the right of the Galveston Pilots to sue the Houston Pilots in the County of Galveston, same being a county where the defendants did not reside. Since the Houston Pilots did not reside in Galveston County, it was necessary for the plaintiffs to show that the cause of action arose in Galveston County. To this end testimony was taken, and the Court, after investigating the law and the facts, held that the Houston Pilots had committed a trespass in Galveston County, Texas, against the rights of the plaintiffs, and that, therefore, the suit could be maintained in Galveston County. Apparently the Court determined from the evidence and the statutes, as distinguished from the pleadings, that the Houston Pilots had committed a trespass against the Galveston Pilots in charging pilotage on ships not within the scope of their authority under the Texas statutes relating to pilots in navigation districts such as the Harris County-Houston Ship Channel Navigation District. The Supreme Court of Texas declined to review this holding, and we take it that the law of the case involving these same rights has been settled by the Texas courts, and even though they have not already been embodied in a judgment final in form they have been adjudged in an order having the attribute of finality in effect.

■ Since it would have been a proper exercise of the lower Court's discretion to have dismissed the cause for the reasons set forth herein, the judgment will not be reversed even if the reasons assigned by the lower Court were by us held to be unsound.

Affirmed.

HUTCHESON, Circuit Judge (dissenting).

As the majority opinion well says, this is a "controversy between rival pilots which involves no vessel, no cargo, no contract, no tort, no owner, claimant, master, or seaman, and calls for no declaration of the law of the seas but for a construction of statutes of Texas relating to the jurisdiction of Gulf, and navigation district, pilots." This being so, the court below was without jurisdiction of the libel and should have dismissed it on that ground. If I am correct in this, this court, on a review of the lower court's judgment, would be confined to reversing the judgment and ordering the libel dismissed for want of jurisdiction. I, therefore, dissent from the decision of the appeal on the assumption that there was jurisdiction in the Court below.